# NEW ORLEANS WATER-WORKS COMPANY *v.* RIVERS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Submitted November 20, 1885.—Decided December 7, 1885.

A legislative grant of an exclusive right to supply water to a municipality and its inhabitants, through pipes and mains laid in the public streets, and upon condition of the performance of the service by the grantee, is a grant of a franchise vested in the State, in consideration of the performance of a public service, and, after performance by the grantee, is a contract protected by the Constitution of the United States against State legislation to impair it.

An exclusive franchise granted to supply water to the inhabitants of a municipality by means of pipes and mains laid through the public streets is violated by a grant to an individual in the municipality of the right to supply his premises with water by means of a pipe or pipes so laid.

The facts which make the case are stated in the opinion of the court.

*Mr. J. R. Beckwith* for appellant.

*Mr. G. L. Hall* for appellee.

*Mr. A. Goldthwaite* by leave of court filed a brief on behalf of the Louisiana Sugar Refining Company.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit was commenced by bill in equity filed by the New Orleans Water Works Company, a corporation of Louisiana, against Robert C. Rivers, a citizen of the same State. A demurrer having been interposed and sustained, the bill was dismissed. The present appeal raises the question whether the plaintiff is entitled, under the allegations of its bill, to the relief asked.

The general object of the suit is to obtain a decree perpetually enjoining the defendant from laying pipes, mains, or con-

duits in the streets or public ways of New Orleans, for the purpose of supplying the St. Charles Hotel in that city, distant six or seven blocks from the Mississippi River, with water from that stream. The plaintiff rests its claim to relief upon the ground that it had, by valid contract with the State and city, the exclusive right, for the full term of fifty years from March 31, 1877, of supplying the city of New Orleans and its inhabitants—other than those contiguous to the Mississippi River—with water from that stream, by means of pipes and conduits placed in the streets of that city ; and that the obligation of that contract was protected by the Constitution of the United States against impairment by any enactment of the State. The defendant bases his right to proceed with the construction of pipes, mains, and conduits upon an ordinance of the common council of New Orleans, adopted November 15, 1882, enacted, as he contends, in pursuance of authority conferred by the constitution and laws of Louisiana.

The case made by the bill, the allegations of which are admitted by the demurrer, is substantially as follows :

By an act of the legislature of Louisiana, approved April 1, 1833, the Commercial Bank of Louisiana was incorporated. It is stated by counsel to have been at that time the policy of the State to attach, as a condition of all banking charters, the construction of some work of public utility. At any rate, it appears that this bank was invested with authority to purchase and hold property necessary to carry into complete effect the object of its charter, which was declared to be " the furnishing of the city with good and wholesome water ; " that it was given " the exclusive privilege," from and after the date of its charter, of " supplying the city and inhabitants of New Orleans and its faubourgs with water from the Mississippi River, by means of pipes and conduits, and for erecting, constructing, or working of any necessary engine ; " that, to that end, it could lay and place any number of conduits, pipes, and aqueducts, " on or over any of the lands or streets of New Orleans and its faubourgs ; " that the city might, within a prescribed time, subscribe for five thousand shares of the capital stock of the company, not subject to deduction, to be paid for by city

bonds, redeemable in forty years, and bearing an annual interest not exceeding five per centum, payable half-yearly; and might, at any time after the expiration of thirty-five years from the passage of the act, purchase the water-works constructed by the bank.

The city made the subscription authorized by the act, issuing its bonds in payment therefor; and the bank constructed an extended system of water works, which it managed and operated for the full term of thirty-five years, at the end of which period, in 1868, the city, exercising the privilege reserved by the State, took possession of and purchased the water works at the appraised value of $2,000,000, paying for the bank's interest, in city bonds, redeemable in forty years, the sum of $1,393,400. The balance of the appraised value represented the city's interest by original subscription, and by purchase subsequently from stockholders. Upon such payment being made, the bank, as it was bound to do, transferred to the city an absolute, complete title to the water-works property, and to all the rights, privileges, and immunities which it possessed.

The city managed and controlled the property for several years, during which period it became seriously embarrassed in its finances. That it might be relieved from such embarrassment, the legislature of Louisiana, in 1877, passed an act entitled "An act to enable the city of New Orleans to promote the public health, and to afford greater security against fire, by the establishment of a corporation to be called the New Orleans Water Works Company, to authorize the said company to issue bonds for the purpose of extending and improving the said works, and to furnish the inhabitants of the city of New Orleans an adequate supply of pure and wholesome water, and to permit holders of the water-works bonds to convert them into stock, and provide for the liquidation of the bonded and floating debt of the city of New Orleans."

By that act, the New Orleans Water Works Company was created a corporation, with a capital stock of $2,000,000, to which the mayor of New Orleans was directed, as soon after the election of directors as the city council should determine, to transfer the water works and all the property appurtenant

thereto.   The company was required, immediately after its organization, to issue to the city stock to the amount of $606,600, as full paid and not subject to assessment, and one additional share for every $100 of water-works bonds which the city had theretofore taken up and extinguished by payment, exchange, or otherwise—the residue of the stock to be received and surrendered to the city for the benefit of the holders of water-works bonds who might elect to exchange them for stock of the company, and the bonds so exchanged to be cancelled.

The act provided, among other things, that the Water Works Company shall own and possess the privileges acquired by the city from the bank; that it shall have, for fifty years from the passage of this act, " the exclusive privilege of supplying the city of New Orleans and its inhabitants with water from the Mississippi, or any other stream or river, by mains or conduits, and for erecting and constructing any necessary works or engines or machines for that purpose;" may purchase or lease such lands or lots of ground, and construct such dykes, mounds, or reservoirs, as may be required for securing and carrying " a full supply of pure water to said city and its inhabitants;" for which purpose, it could lay and place conduits, pipes or aqueducts in the streets, public places and lands of the city, taking care not to obstruct commerce or free circulation; that the city might use water from the pipes and plugs of the company then laid, or thereafter to be laid, free of any charge, for the extinguishment of fires, cleansing of the streets, and for the use of all public buildings, public markets, and charitable institutions; that the company should place, free of any charge, for public purposes, two hydrants of the most approved construction in front of each square where a main pipe was laid; that wherever main pipes are laid it shall be the duty of the company to supply water, for all the purposes mentioned, at all times during the continuance of its charter, in consideration whereof its franchises and property, used in accordance with its charter, were exempted from taxation, state, municipal and parochial; that immediately after its organization the company shall proceed to the erection of new works and pipes, sufficient in

capacity to furnish a full and adequate supply of water, to be drawn from the Mississippi River or elsewhere, as might be judged most expedient, such new works and pipes to be commenced within twelve months from the passage of the act, and be completed within four years, so as to give an adequate supply of water to the people of New Orleans, exclusive of the Fifth District; that, if the work was not done as prescribed, the company should forfeit all exclusive privileges granted to it, and the city might contract with any one else for a supply of water, and appropriate the property of the company; that, after the completion of the new works and pipes, the company should, from time to time, as the wants of the population required, and when the estimated revenue on the cost of such extension should equal ten per centum, extend its works throughout the entire limits of the city and suburbs, as then or thereafter established; and that any failure of the company to comply with these provisions should work a forfeiture of its charter. While the act gave the company the right to fix the rate of charges for water, that right was subject to the condition that the net profits should not exceed ten per cent. per annum. At the expiration of fifty years from the organization of the company, the city was given the privilege of buying the works, pipes, &c., at a valuation to be fixed by experts; and, if the city did not purchase, the company's charter should be *ipso facto* extended for fifty years longer, "but without any exclusive privilege or right to supply water," according to the provisions of the charter.

In addition to authority to increase its capital stock, the company was empowered to borrow money for the purpose of improving and enlarging its works and increasing the supply of pure water; to which end it might issue bonds to an amount not exceeding $2,000,000, on such terms, and bearing such rate of interest, as the directors might determine, secured, principal and interest, by a mortgage of all the property, acquired and to be acquired, and franchises of the company, including its franchise to be a corporation, such mortgage to be a valid and subsisting mortgage until the payment of the debt secured by it, without reinscription, and the bonds not to be disposed of,

except on terms approved by the city council. It was further provided that the company should not declare or pay any dividends until the contemplated works were completed and in use, nor, at any time, except in cash, and then only out of the net receipts, after payment of expenses of operation and interest on its bonded debt.

The act concluded with the declaration, that nothing therein "shall be so construed as to prevent the city council from granting to any person or persons, *contiguous to the river*, the privilege of laying pipes to the river, exclusively for his or their own use."

This act was amended in 1878, but in no particular important to be here noticed, except that the exemption of the company from State taxation was abrogated.

The city of New Orleans accepted the provisions and conditions of the act of 1877, and subscribed the full amount of stock authorized by law. Holders of bonds also subscribed stock to the amount of $500,000, and, as required, surrendered their bonds to the city, which were cancelled, leaving to the latter, in place of their bonds, the stock so subscribed by them. Subsequently, April 9, 1878, the city transferred to the Water Works Company, its successors and assigns, all of the before-mentioned property, subject to its right to repurchase the same as provided in the foregoing acts. Thereafter, the property was controlled and managed by the company. In order to meet the obligations imposed by its charter, it expended large sums of money, raised by the issue of mortgage bonds, to the amount of $500,000, of which $300,000 were sold, and which money, or a large portion thereof, was expended in enlarging and improving the water works, so as to meet the demand for water for the use of the city and its inhabitants.

While the company, according to the allegations of the bill, was executing in good faith the requirements of its charter, a new State constitution was adopted, commonly known as the constitution of 1879. It contained, among other clauses, the following : "Art. 258. All rights, actions, prosecutions, claims, and contracts, as well of individual as of bodies corporate, and all laws in force at the time of the adoption of this constitution,

and not inconsistent therewith, shall continue as if the said constitution had not been adopted. But the monopoly features in the charter of any corporation now existing in the State, save such as may be contained in the charters of railroad companies, are hereby repealed." Under the sanction of that constitutional provision, the city council of New Orleans passed, on November 15, 1882, an ordinance which provided "that Robert E. Rivers, or the lessee of the St. Charles Hotel, of the city of New Orleans, be allowed the right of way and privilege to lay a water-pipe from the Mississippi River, at any point opposite the head of Common or Gravier streets, through either of these streets to said hotel, its front and side streets, with all needed attachments and appurtenances, and to distribute said water through said hotel as said Rivers, or lessee, may desire from said pipes, the pipes to be put at a depth of three feet under the surface of said streets, to be of iron, and of not more than      inches in diameter; that the said pipes and all attachments thereto, in said streets, be arranged and placed under the supervision and approval of the city surveyor; the pavement and streets to be relaid to the satisfaction of the administrator of improvements and city surveyor."

The New Orleans Water Works Company was in existence before the adoption of the present constitution of Louisiana, one of the articles of which, as we have seen, repeals the monopoly features in the charters of all her then existing corporations other than railroad companies. This case is, therefore, controlled by the decision just rendered in *New Orleans Gas Co.* v. *Louisiana Light Co., ante,* 650. The two are not to be distinguished upon principle; for, if it was competent for the State, before the adoption of her present Constitution, as we have held it was, to provide for supplying the city of New Orleans and its people with illuminating gas by means of pipes, mains, and conduits placed at the cost of a private corporation, in its public ways, it was equally competent for her to make a valid contract with a private corporation for supplying, by the same means, pure and wholesome water for like use in the same city. The right to dig up and use the streets and alleys of New Orleans for the purpose of placing pipes and mains

to supply the city and its inhabitants with water is a franchise belonging to the State, which she could grant to such persons or corporations, and upon such terms, as she deemed best for the public interests.    And as the object to be attained was a public one, for which the State could make provision by legislative enactment, the grant of the franchise could be accompanied with such exclusive privileges to the grantee, in respect of the subject of the grant, as in the judgment of the legislative department would best promote the public health and the public comfort, or the protection of public and private property. Such was the nature of the plaintiff's grant, which, not being at the time prohibited by the constitution of the State, was a contract, the obligation of which cannot be impaired by subsequent legislation, or by a change in her organic law.   It is as much a contract, within the meaning of the Constitution of the United States, as a grant to a private corporation for a valuable consideration, or in consideration of public services to be rendered by it, of the exclusive right to construct and maintain a railroad within certain lines and between given points, or a bridge over a navigable stream within a prescribed distance above and below a designated point.

It is idle to insist that this contract was prejudicial either to the public health or to the public safety, as might, perhaps, be said to be the case if the State, after making it, was prevented from exercising any control whatever over the matter of supplying the city and its inhabitants with water.   But, notwithstanding the exclusive privileges granted to the plaintiff, the power remains with the State, or with the municipal government of New Orleans, acting under legislative authority, to make such regulations as will secure to the public the uninterrupted use of the streets, as well as prevent the distribution of water unfit for use, and provide for such a continuous supply, in quantity, as protection to property, public and private, may require.   In the case just decided we said: "The constitutional prohibition upon State laws impairing the obligation of contracts does not restrict the power of the State to protect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such con-

tracts. Rights and privileges arising from contracts with a State are subject to regulations for the protection of the public health, the public morals, and the public safety, in the same sense as are all contracts and all property, whether owned by natural persons or corporations."

The contract with the Water Works Company does not interfere with, but expressly reserves, the riparian rights of any one "contiguous to the river." To that class the appellee does not belong; for his hotel is distant many blocks from the Mississippi River, and others own and occupy the intervening property. Nor does the contract assume to interfere with the right of any person or corporation, even when not contiguous to that stream, to supply their places of business or residences with water therefrom, obtained otherwise than by pipes, mains, or conduits laid in the public ways of the city. The restriction, imposed by the contract upon the use by others than plaintiff of the public streets and ways, for such purposes, is not one of which the appellee can complain. He was not thereby restrained of any freedom or liberty he had before; for, he had no right, without the consent of the government, to dig up the streets and alleys of the city for the purpose of conveying water to his hotel. Nor can he question the authority of the State to grant to a private corporation the exclusive use of public streets and alleys for such purposes, as a means of accomplishing the public object of supplying one of her municipalities and its inhabitants with pure and wholesome water. The permission given to the appellee by the city council to lay pipes in the streets for the purpose of conveying water to his hotel, is plainly in derogation of the State's grant to the appellant; for, if that body can accord such a use of the public ways to him, it may grant a like use to all other citizens and to corporations of every kind, thereby materially diminishing, if not destroying, the value of the plaintiff's contract, upon the faith of which it has expended large sums of money, and rendered services to the public which might otherwise have been performed by the State or the city at the public expense.

Without discussing the authorities referred to in the other

case, or repeating the general considerations there stated, and which are equally applicable here, we are of opinion that the court below erred in sustaining the demurrer to the bill. Under its averments the plaintiff was entitled to a decree perpetually restraining the defendant from laying pipes, conduits, or mains in the public ways of New Orleans for the purpose of conveying water from the Mississippi River to his hotel. In common with all corporations, and all other citizens of New Orleans, he must abide by the contract which the State made with the plaintiff; for, such is the mandate of the Constitution of the United States.

*The decree is reversed, and the cause remanded for further proceedings in conformity with this opinion.*