## MANDATORY INJUNCTION TO COMPEL THE EXERCISE OF A GAS FRANCHISE.

Common Pleas Court of Summit County.

. City of Akron v. East Ohio Gas Company.

Decided, November, 1908.

*Corporations of a Public Nature—Duties of, Can not be Abandoned, When—Gas Company—Nature of Contract with State and Municipality—Regulation of Price of Gas—Franchise—Forfeiture of—Mandatory Injunction—Ultra Vires Acts.*

1. Where a public service corporation, like a natural gas company, authorized to supply gas to a considerable territory, undertakes to serve a municipality within that territory, it is bound by the obligations of two contracts—one with the state as set forth in its articles of incorporation, and the other with the municipality which it has undertaken to serve and which is embodied in the ordinance granting the right to occupy the streets; and its contract with the municipality and with the state for the inhabitants of such municipality, can not be abandoned without violation of its contract with the state.

2. Such a corporation, so long as it continues to exercise and enjoy the franchise of a gas company bestowed by the state, can be compelled by mandatory injunction to continue to furnish gas to a municipality with which it has entered into contract relations to perform that service.

3. While power to regulate the price at which gas shall be furnished is vested in council, it is a power which must be exercised in good faith for the purpose for which it was given; and bad faith on the part of council in fixing an inadequate price or in making unreasonable and arbitrary regulations is a proper subject of inquiry, when put in issue.

Doyle, J.

The East Ohio Gas Company was incorporated pursuant to and by favor of the provisions of the statutes of Ohio, on September 8th, 1898, for the purpose of producing, purchasing and acquiring natural gas; of piping and transporting natural gas from the place or places where it is produced, purchased, or acquired to Saint Clairsville in Belmont county; Uhrichsville,

Dennison, New Philadelphia, Canal Dover, Bolivar and Zoar in Tuscarawas county; Navarre, Canton and Massillon in Stark county, and Akron and Cuyahoga Falls in Summit county, Ohio, and to other cities, villages and places in the counties aforesaid; of selling and supplying natural gas at said places to consumers, and of laying and maintaining all street mains and pipes necessary for said purpose, with the right to acquire and hold all such lands, leases, right-of-way and other real and personal property as may be necessary or convenient for the purpose of producing, transporting, selling and supplying natural gas as aforesaid.

The kind of improvement intended to be constructed as set forth in the articles of incorporation is a line of wrought iron pipe laid under ground from the place where the natural gas is produced, purchased, or acquired, to the cities and places aforesaid, to connect with street mains and pipes laid in the streets, lanes, alleys and public grounds of the cities and places aforesaid, for the transportation and supply of natural gas to the said cities and places and their inhabitants, to which shall be connected all such regulators, valves, curb boxes and safety appliances as may be necessary in the conduct of said business.

The said line shall commence at a point on the Ohio river in Belmont county, Ohio, and run from there through Belmont, Harrison, Tuscarawas, Stark and Summit counties, Ohio, to Cuyahoga Falls in Summit county. The termini of said improvement shall be a point on the Ohio river in Belmont county, Ohio, and a point at Cuyahoga Falls in Summit county, Ohio.

In 1902 the company amended its articles of incorporation so as to specifically include Cleveland and Cuyahoga county in its field of operations, but not changing its charter in respect to other places in the counties aforesaid. The amended charter contains another additional privilege, that of manufacturing gas and transporting and supplying the same in the territory embraced in the franchise, and some other matters incident to the manufacture of gas.

The company on September 26th, 1898, by an ordinance of the council of the city of Akron acquired the consent of the municipal authorities of that city to lay its pipes for conducting gas through the city, to supply consumers of the gas therein,

The defendant is now actively supplying the cities of Cleveland, Akron, Canton and Massillon and is purposing to furnish Youngstown, Warren, Niles, Ravenna, Kent, Cuyahoga Falls and Alliance with natural gas. It has lines of mains and supply pipes extending in a southerly direction across the state of Ohio from Cleveland to the state line in the middle of the Ohio river, one of which supplies the cities of Akron and Canton.

The ordinance giving the consent of the municipal authorities of Akron to the East Ohio Gas Company to occupy its streets with gas pipes, fixed the rate to be charged for natural gas furnished to the citizens and public buildings of said city, during the period of ten years next ensuing after its passage, as follows: during the first five years at twenty-five cents per thousand cubic feet if paid before the tenth day of the month following the selling and delivery thereof, and twenty-seven cents if not paid in that time, and after the expiration of five years from the date of the passage of the ordinance at thirty cents and thirty-two cents respectively, according to whether paid before the tenth day of the month following the use. The ordinance also provided for a discount of ten per cent. for gas furnished certain public institutions. It was accepted in writing by the defendant.

At the expiration of the ten years period provided for in the ordinance and pursuant to Section 1536-567 (2478), Revised Statutes of Ohio, the council on the 7th of October, 1908, passed an ordinance fixing the rates to be charged for natural gas at twenty and twenty-two cents respectively, according to whether paid on the tenth of the month following its use, to be operative for the period of ten years following the expiration of the ten year period provided in the first ordinance.

The defendant notified the plaintiff that it would decline to accept the terms of said ordinance; and that it would cease to furnish the city and its inhabitants with natural gas. The plaintiff thereupon filed its petition in this court asking that the defendant be enjoined from ceasing to supply natural gas to the public buildings and the inhabitants of said city. The answer of the defendant does not controvert the allegations of the petition but pleads as follows as a defense:

"Defendant has notified the plaintiff that it would decline to accept the terms of said ordinance; that it would cease to furnish the said city and its inhabitants with natural gas; intending thereby entirely to relinquish and surrender the privileges and franchise granted to it by the ordinance of September 26, 1898, and wholly to retire from said city. This intention defendant now confirms.

"Defendant therefore asks that the temporary injunction heretofore granted herein may be dissolved, and that this defendant may be permitted to surrender said privilege and franchise, to remove its mains and pipes from the streets and other public places of said city, restoring the same to their present condition, and to retire from the business of furnishing natural gas to the said city of Akron and its inhabitants."

The issue is narrowed down to the question, whether the defendant can now relinquish and surrender the privileges accorded it under the laws of this state and ordinance of the plaintiff consenting to the laying of defendant's pipes in the city, and wholly retire from the business of furnishing natural gas to the plaintiff and its inhabitants. Has the plaintiff the right to require the defendant to remain in the city in the exercise of its franchise to furnish natural gas, whether the company is willing so to do or not?

The right of the defendant to exist as a legal entity to prosecute the purposes of its organization was derived from the state pursuant to statutes providing for the incorporation of companies.

Formerly, under the old Constitution, corporations could be created by special acts of the Legislature. These were called charters. Under the present Constitution corporations must be formed under the general laws. The Legislature has provided in detail what shall be done by an aggregation of individuals who desire to incorporate. Having complied with the provisions of the law the Secretary of State issues the articles of incorporation.

Where the Legislature acts directly in granting the privileges of being a body corporate the character of the right is more apparent than where the body is created under a general law. The special privilege emanates directly from the government by

a special legislative enactment, and has none of the appearance of a right rather than a privilege.

The fact that now no action of a public body like a Legislature, acting specially, confers a privilege which it may withhold if it chooses, does not make the securing of the right to be a body corporate by conforming to the provisions of a general law any less a franchise. In the one case it may be said to have been granted and in the other obtained.

Where such incorporation is for purposes of a public nature, to meet a public necessity, or of such a character that having been once undertaken it can not be discontinued without prejudice to the public interest, the franchise takes upon itself the character of a contract between the state from whom the franchise issued and the body corporate existing and operating under it.

No case exactly like the one at bar has been found, but the rules established by some of the courts for construing franchises similar to that of defendant may apply.

It is not contested but what the defendant could be compelled to resume furnishing gas to some portion of the city which it might attempt to abandon. Cases like *State* v. *H. & N. H. R. R.*, 29 Conn., 539, it is claimed do not apply. In that case the Hartford and New Haven Railroad Company was chartered to construct and operate a railroad from Hartford to the navigable waters of New Haven harbor. A steamboat company was afterwards chartered which connected with the harbor terminus and was a great convenience to the public. The railroad changed its route and attempted to discontinue running to the harbor. It was compelled by mandamus proceedings to continue. That was an attempt to abandon a part of a railroad. In this case there is an attempt so claimed by defendant to abandon all its rights in the city of Akron and not a part. Hence it is claimed that the doctrine of that and similar cases is not applicable.

The leading cases, where the character of the business of supplying gas or water to cities and their inhabitants are considered, have arisen from an attempt of companies operating under franchises to carry on such business to dispose of and abandon their franchises by contract.

*Chicago Gas Light Co.* v. *Gas Light Co.*, 121 Ill., 530 (2 Am. St. Rep., 124), was a case where one gas company by contract agreed with another not to furnish gas to any persons within a certain part of the territory of the city where it had been authorized to furnish gas. The same may be said of this case as of the Hartford & New Haven Railroad case, that is, that there was a mere attempt to abandon a part of the field of operation and not the entire field. The case is cited for the reason that it defines the character of the business of furnishing gas and also for the reasons given for denying the gas company the right to so abandon a part of the field of its operations.

It was held in that case that the manufacture and distribution of illuminating gas, under legislative authority, in the streets of a town, or city, is the exercise of a franchise belonging to the state. Such a franchise is conferred for the benefit of the public as well as of the company. The court said in the dictum that the business was of a public nature, and held that by such a contract it bound itself to avoid the performance of a public duty and such contract was against public policy, *ultra vires* and void. This doctrine was reaffirmed in *People* v. *Chicago Gas Trust Co.*, 130 Ill., 268.

In *Peoria, etc., R. R. Co.* v. *Coal Valley Mining Co.*, 68 Ill., 489, it was held that the duties which railroad companies owed to the public, and which are the considerations upon which their privileges are conferred, can not be avoided by *neglect, refusal* or agreement with other persons or corporations. Therefore, any *contract* to *prevent* the *faithful discharge of any such duties will be against public policy and void.*

It has also been held in that state that the sale of the powers of one company to another without authority of the Legislature is against public policy, and courts will not assist to promote the transfer. *Hays* v. *Ottawa, etc., R. R.*, 61 Ill., 422.

A case where an attempt was made by a public service corporation to dispose of its entire franchise was *Thomas* v. *The West Jersey R. R. Co.*, 101 U. S., 71 (Book 25, L. Ed., 950), where it was held:

"The *franchise* and *powers granted* to *such corporations* are, in a large measure, designed to be exercised for the public

good, and this exercise of them is the consideration of the public grant. *Any contract by which the corporation disables itself to perform those duties to the public, or attempts to absolve it from their obligation without the consent of the state, is a violation of its contract with the state and is forbidden by public policy and is, therefore, void.*"

Mr. Justice Miller said:

"Where a corporation like a railroad company has granted to it by charter a franchise intended in large measure to be exercised for the public good, *the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions, which undertakes without the consent of the state to transfer* to others the rights and powers conferred by the charter, *and to relieve the grantees of the burden which it imposes,* is a violation of the contract with the state and is void as against public policy."

In *New Orleans Gas Company* v. *Louisiana Light Company,* 115 U. S., 650 (29 L. Ed., 516, read 520), it was said:

"The manufacture of gas and its distribution for public and private use, by means of pipes laid, under legislative authority, in the streets and ways of a city, is not an ordinary business in which anyone may engage, but is a franchise belonging to the government, to be granted, for the accomplishment of public objects, to whomsoever and upon what terms it pleases. *It is a business of a public nature, and meets a public necessity, for which the state may make provision.* It is one which, so far from affecting the public injuriously, has become one of the most important agencies of civilization for the promotion of the public convenience and the public safety."

In *New Orleans Water Works Co.* v. *Rivers,* 115 U. S., 674 (Book 29, L. Ed., 525), held as follows:

"The charter of the New Orleans Water Works Company, granting to that corporation the exclusive privileges of supplying New Orleans and its inhabitants with pure and wholesome water from the Mississippi river, by means of mains and pipes placed in the streets, public places, and lands of that city—reserving to the city council authority to grant to any person, contiguous to that stream, the privilege of laying pipes to the river, exclusively for his use—constitutes a contract within the mean-

ing of the contract clause of the Constitution of the United States.''

The court, per Justice Harlan (page 527), says:

''The New Orleans Water Works Company was in existence before the adoption of the present Constitution of Louisiana, one of the articles of which, as we have seen, repeals the monopoly features in the charters of all then existing corporations other than railroad companies. This case is, therefore, controlled by the decision just rendered in *New Orleans Gas Light Co.* v. *Louisiana Light and Heat Producing and Manufacturing Co.* The two are not to be distinguished upon principle; for if it was competent for the state, before the adoption of her present Constitution, as we have held it was, to provide for supplying the city of New Orleans and its people with illuminating gas by means of pipes, mains and conduits placed, at the cost of a private corporation, in its public ways, it was equally competent for her to make a valid contract with a private corporation for supplying, by the same means, pure and wholesome water for like use in the same city. The right to dig up and use the streets and alleys of New Orleans for the purpose of placing pipes and mains to supply the city and its inhabitants with water is a franchise belonging to the state, which she could grant to such persons or corporations, and upon such terms, as she deemed best for the public interest.

'''And as the object to be attained was a public one, for which the state could make provision by legislative enactment, the grant of the franchise could be accompanied with such exclusive privileges to the grantee, in respect of the subject of the grant, as in the judgment of the legislative department would best promote the public health and public comfort or the protection of public and private property. Such was the nature of the plaintiff's grant, which, not being at the time prohibited by the Constitution of the state, was *a contract, the obligation of which can not be impaired by subsequent legislation,* or by a change in her organic law. *It is as much a contract* within the meaning of the Constitution of the United States, *as a grant to a private corporation for a valuable consideration, or in consideration of public services to be rendered by it,* of the exclusive right to construct and maintain a railroad within certain lines and between given points, or a bridge over a navigable stream within a prescribed distance above and below a designated point.''

An enterprise the purpose of which is to render service to the public, although under private control, is a *quasi*-public business, and not one in which every one may engage as of right, but is a franchise; and when not forbidden by the organic law of the state, may be granted to whomsoever and upon what terms the state pleases. *New Orleans Water Works Co.* v. *Rivers*, 115 U. S., 674 (Book 29, L. Ed., 525).

In *Louisiana Gas Co.* v. *Citizens Gas Co.*, 115 U. S., 683 (Book 29, L. Ed., 510, 513), the court say:

"Such a business is not like that of an ordinary corporation engaged in the manufacture of articles that may be quite as indispensable to some persons as are gas lights. The former article may be supplied by individual effort, and with their supply the government has no such concern that it can grant an exclusive right to engage in their manufacture and sale. But as the distribution of gas in thickly populated districts is a matter of which the public may assume the control, service rendered in supplying it for the public and private use constitute such public services as (under the Constitution of Kentucky) authorized the Legislature to grant to the defendant the exclusive privilege in question."

To the same effect are *Shepard* v. *Wilwaukee Gas Light Co.*, 6 Wis., 539; *City of St. Louis* v. *St. Louis Gas Light Co.*, 70 Mo., 69; 2 Dillon on Municipal Corporations (3d Ed.), Section 691; 2 Morawetz on Private Corporations, Section 1129.

A later case, *Gibbs* v. *Consolidated Gas Company of Baltimore City*, 130 U. S., 396 (Book 32, L. Ed., 979), holds:

"The supplying of illuminating gas is a business of a public nature, to meet a public necessity; and where such business can not be restrained without prejudice to the public interest, contracts imposing such restraints, however partial, will not be enforced or sustained, because in contravention of public policy.

"*A corporation can not disable itself by contract from performing the public duties which it has undertaken; nor, by agreement, compel itself to make public accommodation* subservient to its private interests."

Chief Justice Fuller on page 985 says (Book 32, L. Ed.) :

"These gas companies entered the streets of Baltimore, under their charters, in the exercise of the equivalent of the power of

eminent domain, and are to be held as having assumed an obligation to fulfill the public purposes to subserve which they were incorporated. *At common law corporations formed merely for the pecuniary benefit of the shareholders could, by a vote of the majority thereof, part with their property and wind up their business; but corporations to which privileges are granted in order to enable them to accommodate the public, and in the proper discharge of whose duties the public are interested do not come within the rule.*"

The Supreme Court of this state has said that the supplying of natural gas to municipal corporations and their inhabitants is a public use or service (*State* v. *Toledo*, 48 O. S., 112-136-142). That was a case involving the right of the city to supply itself and its inhabitants. *Held:* That it could. That fixes the character of such uses in Ohio, and the state giving the same privilege to a corporation will surely not change the nature of that use.

If a contract made by a gas company, by which it divests itself of the privilege of furnishing gas to a community, is against public policy, is *ultra vires* and void, the logical deduction is that any other effort to accomplish the same object would be likewise void unless on account of the unprofitableness of the enterprise or for other cause it has been a failure. The statutory law of this state provides for the incorporation of companies of this character and delegates to the municipal corporations and *quasi*-municipal authorities the power to make the terms upon which such corporations shall occupy and use the highways and public grounds, and pass through the lands of their respective jurisdictions, for the purpose of exploiting the public enterprises which they have undertaken. After the corporation, in furtherance of the purposes of its franchise, has begun the supplying of a public need whether necessary or created by the suggestion and inducement of the company so proposing to minister to the public requirements in that behalf, can it from caprice or for business reasons abandon the enterprise?

The question has not been squarely before the court but it has been suggested that the only reason for which such an enter-

prise could be abandoned was because it was unremunerative and unprofitable.

In *Chicago Gas Light Co.* v. *Gas Light Co.* it was said (2 Am. St. Rep., 131):

"There may be cases where a corporation may abandon a public work for reasonable cause, but this is a very different thing from disabling itself, by contract, from the performance of a duty to the public."

In *Gibbs* v. *Consolidated Gas Co. of Baltimore* the court said: *"But we are not concerned here with the question where, if ever, a corporation can cease to operate without forfeiture of its franchises, upon the excuse that it can not go forward because of expense and want of remuneration.*

"There is no evidence in this record of any such state of case, and, on the contrary, it appears that the cost of the manufacture of gas was largely below the price to be charged named in the stipulation between the parties."

The interest of the public in the business of supplying gas to it is such that it would be against public policy to allow a corporation organized for the purpose of so supplying gas to discontinue except for good cause. A showing that the business is unprofitable or for other good and sufficient reasons the objects of the corporation have failed might excuse a fulfillment of its obligations under its franchise and allow it to dissolve and surrender its franchise, but even in such an event the public interest may be such that the business should be kept in operation until its wants are supplied by other means.

If the defendant in this case were organized for the sole purpose of supplying the city of Akron with gas and were attempting to abandon the enterprise and withdraw, under the above holdings of the court, the court would be constrained to hold that it could not. But this is not a case of an entire abandonment of its business. The East Ohio Gas Company only seeks to abandon a part of its field of operation. It was organized to supply gas to the villages and cities and inhabitants in five counties of the state, which were chosen originally as the field of operations, and one other county has been added by amend-

of the cities in the district composed of these counties, and is now preparing to supply the other places mentioned, which it has prepared to do by laying of gas mains through the district.

Both parties have referred to the ordinance giving defendant leave to use the streets of the city for laying its pipes as the source of the rights and obligations of both parties. This may be correct in part, that is, as to all the matters and things stipulated in that ordinance. So far as it goes it is a contract between the plaintiff and defendant, but neither the state nor the inhabitants of the city are precluded of their rights by the ordinance contract.

There is a prior and controlling contract to be considered, and that is the franchise granted by the state to the defendant. When a company avails itself of the privileges of the incorporation laws of the state and takes advantage of statutory privileges, such as provided in Section 3550, whereby it is privileged to supply gas to a city, and for that purpose to lay conductors or pipes therefor in the streets, it has acquired a valuable privilege and, it being of a public character, has assumed an obligation that requires it, where the project has once been entered upon, to continue it until relieved by the power which granted the privilege.

The Legislature could by general laws grant a gas company the right to use the streets without municipal control and provide its own regulations governing the supplying of gas. The streets and other public grounds of a municipality belong to the public and are, by the state, put into the care, custody and control of the municipal authorities for care and preservation for the uses of their dedication. Without legislative authority the municipality can not grant rights in public property of that kind to interfere with public uses.

It was therefore natural that the state having placed the care and control of the streets in the municipality should also constitute it an agency of the state to prescribe the manner in which these corporations for public service could occupy the streets for prosecuting their business. By Section 3550 and like statutes, the state grants the right to occupy the public

ment of its charter. It is now actively supplying gas in four grounds, but qualifies the grant by a provision that it shall be with the consent of the municipal authorities and under such reasonable regulations they may prescribe.

Before a public service company like a gas or water company can begin the supplying of the inhabitants of a city, it has virtually made two contracts under which it has assumed divers and sundry obligations, one with the state by which it assumes the duties devolving upon it to render the public service which the purposes of its organization have defined, and the other with the municipality by which it has assumed to carry out the things on its part agreed to be done as set forth in the ordinance by which the consent of the municipal authorities was obtained.

The East Ohio Gas Company when it secured its charter proposed to supply the cities of a certain territory or district of the state with natural gas. The state by the provisions of the statutes passed for the benefit of such companies gave it the right to occupy the streets of these cities, provided it secured the consent therefor from the municipal authorities. It secured such consent from the municipal authorities of Akron and began supplying the inhabitants of Akron with gas. The grant of the state was then complete and the contract fully entered into.

It can not without the consent of the state refuse to supply the inhabitants of that city without violating the contract. The contract with the state is entire; it is not composed of separate grants, but there has been one grant to this company giving it rights in all the public grounds of all the cities of the entire distract or territory selected by it for the prosecution of its business.

It may secure consents in one or more cities, as its officials desire, but having once secured such consent in any of these, and entered into the business of furnishing gas, it can not cease from furnishing gas in such cities to the extent therein it has begun furnishing the inhabitants thereof without the consent of the state.

It might as well claim the right to cease furnishing gas on a particular street, which it has occupied and on which it has begun supplying the inhabitants in a city, as to cease supplying any of the cities in the district when it has once begun supplying them.

Taking the strict construction of defendant's counsel put on the holding of the Supreme Court in the first syllabus of *Gas Light Co.* v. *Zanesville,* 47 O. S., 35, as correct, the defendant can be compelled by a mandatory injunction to furnish gas so long as it continues to exercise and enjoy its franchises as a gas company.

In that instance the franchise covered only the territory embraced within the limits of that city, and the decree of the district court, which was affirmed, was framed to cover the boundaries of its franchise, to-wit, "within the city of Zanseville."

Applied to the case at bar, the Zanesville case would require the defendant to continue to supply natural gas to the plaintiff and its inhabitants so long as "it continues to exercise its franchises within the" territory or district chosen by it in its articles of incorporation within which to carry on its purposes of supplying consumers with natural gas.

Following that case literally this court would be compelled to hold that the defendant must continue to supply the plaintiff and its inhabitants with natural gas so long as it continues to exercise its franchise.

The regulation of the price which defendant may charge for natural gas in the city of Akron as established by the ordinance of October 7th, 1908, was made pursuant to Section 2478, Revised Statutes.

In *State* v. *Gas Light & Coke Co.,* 18 O. S., 262, it was held:

"The intention of the Legislature in empowering city councils to regulate the price of gas, was to limit incorporated gas companies to fair and reasonable prices for the gas which they might furnish for public or private use. This discretionary power of regulation might have been vested elsewhere; but, wherever vested, it must be exercised in good faith for the purpose for which it was given."

Bad faith of a council in passing an ordinance fixing the price, inadequacy of price, and arbitrary and unreasonable regulations are a proper subject of inquiry when put in issue. *State* v. *Gas Light & Coke Co., supra; State* v. *Gas Co.*, 37 O. S., 45.

Not being in issue in this case, the decree must be for the plaintiff upon the facts and pursuant to the law of the case.