65 N.J. Super. 86 (1961)
167 A.2d 46
THE BEVERLY SEWERAGE AUTHORITY, A PUBLIC BODY CORPORATE AND POLITIC, PLAINTIFF,
v.
THE DELANCO SEWERAGE AUTHORITY, A PUBLIC BODY CORPORATE AND POLITIC, DEFENDANT. WILLIAM McCRUDDEN, PLAINTIFF,
v.
THE BEVERLY SEWERAGE AUTHORITY AND THE DELANCO SEWERAGE AUTHORITY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Superior Court of New Jersey, Law Division.
Decided January 3, 1961.
*88 Messrs. Bookbinder, Peskin & Markowitz (Mr. Sidney W. Bookbinder and Mr. Daniel A. O'Donnell appearing), attorneys for the Beverly Sewerage Authority.
Messrs. Parker, McCay & Criscuolo (Mr. Robert W. Criscuolo appearing), attorneys for the Delanco Sewerage Authority.
Mr. A. Jerome Moore, attorney for William McCrudden.
SCHALICK, J.S.C.
The Beverly Sewerage Authority instituted an action in the Chancery Division against the Delanco Sewerage Authority to reform or rescind the contract executed by them on October 3, 1947, which contract was for a term of 40 years. In the Law Division plaintiff McCrudden, a taxpayer of the City of Beverly, brought an action in lieu of prerogative writs against both sewerage authorities to invalidate the contract between them or to compel the Beverly Sewerage Authority to charge, and the Delanco Sewerage Authority to pay, an annual service charge per user that would correspond with the charges made to the Beverly users. The actions were consolidated for trial.
The origin of the contract between the City of Beverly and the Township of Delanco, adjacent municipalities, was the result of a series of negotiations brought about by the demands of the State to correct the pollution of the Delaware River. In 1947 Beverly had an inadequate sewer plant and Delanco had no such facility. Beverly transferred its plant to its authority and Delanco, faced with the alternative of building a plant or contracting with a neighboring authority, *89 chose to contract with the Beverly Authority. At that time this was advantageous to both parties.
Delanco only constructed a sanitary sewerage collection system, while Beverly expanded its plant for the treatment and disposal of sewage from both districts.
By the terms of the contract the parties agreed as follows:
"(1) Delanco shall connect its collecting system with that of Beverly at the boundary line between the Township of Delanco and the City of Beverly. Beverly agrees to convey from the City line and treat and dispose of the sewage (except industrial wastes) of Delanco.
(2) For said service, Delanco will pay to Beverly the following amounts:
(a) Commencing on the date upon which the collecting system of Delanco is connected to that of Beverly and prior to completion of the entire collecting system, as described in Section (9) of this agreement, Two Dollars ($2.) per annum in advance for each person occupying premises whose sewage is discharged into the collecting system of Delanco.
(b) Commencing on the date upon which the collecting system of Delanco is completed in accordance with the provisions of Section (9) of this agreement, the minimum charge of Five Thousand Dollars ($5,000.) per annum in quarterly installments in advance on the 1st days of January, April, July and October in each year (except that the amount of the first installment may be pro-rated in order to pay Beverly at this annual rate and may be reduced to reflect overpayment of charges under subdivision (a) of this paragraph).
In the event that the population of the Township of Delanco exceeds 2,500, the minimum annual charge of $5,000 per annum referred to herein shall be increased by $1.50 for each person in excess of 2,500 excluding for such purposes the number of the persons in the Township of Delanco to whom sewerage service is not rendered. The population of the Township of Delanco shall be determined at any particular time by the then last preceding Federal census."
Included are provisions for the care of industrial wastes, and a right to renew with ten years' notice by either party, the terms of the renewal to be subject to further negotiation. The term of the contract is for 40 years during which term no provision is made for a change of charges or the right of re-negotiation, but both parties are subject to the quoted terms of the contract.
*90 On December 30, 1955, by reason of a dispute between the authorities relative to the interpretation of paragraph (2) of the contract, they did alter and modify that provision, by a supplemental agreement, in this manner:
"* * * it is agreed by and between the parties hereto that said Paragraph (2) of said contract shall be altered, changed or modified to read as follows:
`(2) For said service, Delanco will pay to Beverly the following amounts:
(a) Commencing on the date upon which the collecting system of Delanco is connected to that of Beverly and prior to completion of the entire collecting system, as described in Section (9) of this agreement, Two Dollars ($2.) per annum in advance for each person occupying premises whose sewage is discharged into the collecting system of Delanco.
(b) Commencing on the date upon which the collecting system of Delanco is completed in accordance with the provisions of Section (9) of this agreement, the minimum charge of Five Thousand Dollars ($5,000.) per annum in quarterly installments in advance on the 1st days of January, April, July and October in each year (except that the amount of the first installment may be pro-rated in order to pay Beverly at this annual rate and may be reduced to reflect overpayment of charges under subdivision (a) of this paragraph).
In the event that the population of the Township of Delanco at any particular time exceeds 2,500 as shown by the then last preceding Federal census, the minimum annual charge of $5,000 per annum referred to herein shall be increased by $1.50 for each person in excess of 2,500 as shown by such census, excluding for such purposes the number of the persons in the Township of Delanco to whom sewerage service is not rendered, plus $5.00 for each house connected with the Delanco sewerage system since the date such census became official, deducting for such purposes any dwelling disconnected since such date; provided, however, that the payments heretofore made by Delanco to Beverly for the year 1954 and prior years shall be deemed to be payment in full for said years; and further provided that the total annual payment for the year 1955 shall be $5,950.00; and provided further, that the total payment for the year 1956, and each year thereafter until the date on which the 1960 census becomes official, shall be $5,000, plus $1.50 for each person in excess of 2,500 as shown by the 1950 census, excluding for such purpose the number of persons in the Township of Delanco to whom sewerage service is not rendered, plus $5.00 for each house connected with the Delanco sewerage system since January 1, 1952, deducting for such purpose any house disconnected since said date.'"
*91 This supplemental contract further provided:
"This supplementary contract and its terms and conditions shall run concurrently with and be made a part of the original contract entered into between the parties hereto on October 31, 1947, the term of said original contract referred to herein being for a period expiring forty years after the date upon which the Delanco sewerage system was connected with the Beverly sewerage system."
Beverly adopted a schedule of rates and service charges for its customers and Delanco adopted a schedule for its users complying with the provisions of N.J.S.A. 40:14A-8, which statute requires that the service charges must meet all annual budget requirements so that the authority operates as a self-liquidating entity.
Later, Beverly entered into a similar agreement with another adjoining municipality, Edgewater Park Township. Beverly also handles the industrial waste from Beaunit Mills, an industry located in Beverly.
It is admitted that the Beverly Sewerage plant was designed in 1947 to meet the requirements of a municipality with a population of 10,000 persons and 1,000,000 gallons of sewage per day. The present average daily flow into said plant is approximately 825,000 gallons, which is well within the capacity of the plant and the handling of the sewage from all sources does not necessitate the enlargement of the Beverly plant.
The present demands of the New Jersey Department of Health require immediate capital improvements to the plant by Beverly, including the (1) replacement of old parts, (2) increase in the capacity of various elements, and (3) change-over to high rate filtration. The engineer estimates the cost of these requirements will be an expenditure of $45,000. The state requirements are the result of the increased deposit of waste in the Delaware River.
The Beverly Authority proved that it cannot finance these capital improvements through a bond issue because of the restrictions in the 1947 bond resolution, but must finance *92 them through current revenues, and to meet this the service charge to users in the City of Beverly was recently increased approximately 50%.
The plaintiff McCrudden contends that the contracts are illegal because the rates constitute an unlawful and unconstitutional discrimination between the Delanco users and the Beverly users, and that Beverly is required to treat all users alike. Carrying his contention further, he alleges that all users receive identical service from the main plant in Beverly, and the costs of operating the plant, distinguished from the service connections, must be borne equally by the individual users.
Beverly argues that the contracts do not conform to the standards laid down by the Legislature for the fixing of rates by sewerage authorities, citing N.J.S.A. 40:14A-8 as controlling; and if the standards set forth in N.J.S.A. 40:14A-8 do not apply to contracts under N.J.S.A. 40:14A-23, 24, then N.J.S.A. 40:14A-23, 24 are unconstitutional as vesting arbitrary power in the Authority without requiring adequate standards to govern its action.
Beverly seeks an alternative relief as to the rates, if the contracts are otherwise upheld, urging the court to declare the rates illegal and so direct the parties to negotiate a new rate schedule using the factors named in N.J.S.A. 40:14A-8, which, if such negotiation fails, would then permit Beverly to adjust the rates accordingly, all of which would be subject to judicial review.
The court finds no conflict in the factual situation which defines the previous relations of the parties and their present positions. The testimony in reference to the formulation of the first contract shows joint meetings, proposals and counter-proposals, expert advice from engineers, a study of future requirements, offers to Delanco from municipalities other than Beverly, and the consideration of an escalator clause as to rates, but a resolution against such a clause by Beverly when Delanco sought a companion clause providing for decrease of the annual payment in the event of a cost *93 decrease. The Beverly engineer at that time, a witness in this action, projected the cost over a 30-year term, and the original plans were designed to meet the present municipal and industrial users, and the plant's facilities are now more than adequate in capacity. Plant enlargements were also projected at this early date.
The average of the rate per dwelling in Beverly was set at $18.46, while Delanco, which originally had a higher rate, now has reduced its present rate to $30.14 per dwelling and Edgewater Park's rate is fixed at $39.27.
The court finds that Beverly, in fixing its rates, did so without viewing the demands that would be made on it for capital expenditures for plant improvement and modernization. Beverly enjoyed the advantages of a lower rate for a number of years and now is seeking financial assistance from other sources. The sound method of financing was at all times available to it, but it elected to enjoy the low rate without thought for the future demands.
A sewerage authority is empowered by N.J.S.A. 40:14A-24 to enter into a contract or contracts with any other sewerage authority and "Any such contract may contain any of the terms and provisions set forth in section 23 of this act and permitted by said section to be contained in contracts made thereunder." Section 23, referred to, N.J.S.A. 40:14A-23, includes this pertinent provision:
"Any such contract may be made with or without consideration and for a specified or an unlimited time and on any terms and conditions which may be approved by such municipality and which may be agreed to by the sewer authority in conformity with its contracts with the holders of any bonds, * * *."
The "Sewerage Authorities Law," N.J.S.A. 40:14A-1 et seq., constitutes a sewerage authority a public body politic and corporate, as a subdivision of the State with enumerated powers, including the right, N.J.S.A. 40:14A-7(11), "To enter into any and all contracts, execute any and all instruments and do and perform any and all acts or things *94 necessary, convenient or desirable for the purpose of the sewerage authority or to carry out any power expressly given in this act."
The rates and service charges authorized by statute are defined in N.J.S.A. 40:14A-8 and these charges to the individual consumer "* * * shall as nearly as the sewerage authority shall deem practicable and equitable be uniform throughout the district * * *." Kline v. Bellmawr Sewerage Authority, 55 N.J. Super. 153 (Ch. Div. 1959), affirmed Landy v. Bellmawr Sewerage Auth., 61 N.J. Super. 396 (App. Div. 1960). The several provisions of the statute define its authority, as an operating entity, and the methods of financing its operations.
The statute then treats with authorized dealings between the sewerage district and a county, a municipality or another sewerage district. By reason of the reference to N.J.S.A. 40:14A-23 in the section authorizing sewerage districts to contract with each other, this section 23 is important. In permitting a sewerage authority to contract with a municipality within or without the sewerage district, the statute specifies that "Such contract or contracts may provide for the payment to the sewerage authority by such municipality annually or otherwise of such sum or sums of money, computed at fixed amounts or by a formula based on any factors or other matters described in subsection (b) of section eight of this act [which is the above cited N.J.S.A. 40:14A-8] or in any other manner, as said contract or contracts may provide * * *."
A fixed amount, not limited to the formula for rates and service charges included in N.J.S.A. 40:14A-8, is set forth in the statute. Other permissive provisions are specifically enumerated. The statute excludes the right of the contracting sewerage authority, once it has entered into a valid contract, from exercising any right to impose rates and service charges contrary to the provisions of the contract. "Any such contract may provide that the sum or sums so payable to the sewerage authority shall be in lieu of all or *95 any part of the service charges which would otherwise be charged and collected by the sewerage authority with regards to persons or real property within such municipality." These provisions, when read with the previously cited "Any such contract may be made with or without consideration and for a specified or an unlimited time and on any terms and conditions * * *," give validity to the contract between Beverly and Delanco. The 40-year term in the contract disturbs the Beverly Authority because it obviously seeks periodic renegotiations.
The duration of a contract let by a municipality must, in the absence of statute, be reasonable, having regard to the circumstances. Wilmington Parking Authority v. Ranken, 34 Del. Ch. 439, 105 A.2d 614 (Del. Sup. Ct. 1954); 10 McQuillin, Municipal Corporations, § 29,100. In the many cases where a definite period was provided in the contract, the question ofttimes arose whether the period was a reasonable one, such as contracts for the furnishing of water by water companies. New Orleans Waterworks Co. v. Rivers, 115 U.S. 674, 6 S.Ct. 273, 29 L.Ed. 525 (1885), a contract for 50 years was sustained; Walla Walla Water Co. v. Walla Walla Company, 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341 (1898), a contract for 25 years was sustained; Vicksburg Water Company v. Vicksburg, 185 U.S. 65, 22 S.Ct. 585, 46 L.Ed. 808 (1902), a contract for 30 years was held not unreasonable.
Relying on section 23, N.J.S.A. 40:14A-23, Beverly and Delanco have the statutory authority to contract "* * * for a specified or an unlimited time and on any terms and conditions * * *." The reasonableness of the term and conditions would always be subject to judicial review. Such contracts may be authorized, but under some circumstances they may be so unreasonable as to be ultra vires. The substantive defense of ultra vires would in such an instance be available. See Spoerl v. Pennsauken, 14 N.J. 186 (1954).
There is nothing in the instant case to cause the court to find either the term or the conditions unreasonable. *96 In the light of the problems which each authority was required to solve when the contract was entered into, one needing financial aid from another user, the other faced with building a facility or providing the aid to the other, the contract proved most satisfactory. The term of 40 years then was supported by the engineer's projections as to needs of the municipalities in view of future growth in relation to plant capacity, and at this time both the projections and the adequacy of the plant have proved themselves.
Where statutory authority exists, such contracts between authorities are not against public policy. A perpetual obligation between contracting municipalities was held not against public policy in New Brunswick v. Milltown, 135 N.J. Eq. 310 (Ch. 1944), when authorized by statute.
The plaintiffs also challenge the contracts, assuming they conform with the statutory requirements, alleging the statute is unconstitutional because it does not set forth the necessary standards to guide and control the authorities in their contracts, and that the true standard for fixing rates must be found in N.J.S.A. 40:14A-8, which governs the authorities' charges to individual users.
"Contracts between municipalities stand on the same footing as contracts of natural persons, and are governed by the same considerations in determining their validity and effect. Mayor and Council of Jersey City v. Town of Harrison, 71 N.J.L. 69 (Sup. Ct. 1904), affirmed 72 N.J.L. 185 (E. & A. 1905); Frank v. Board of Education of Jersey City, 90 N.J.L. 273 (E. & A. 1917); Peejay Corporation v. City of Newark, 136 N.J. Eq. 31 (E. & A. 1944). And the `existing statutes and rules of law are always among the [surrounding] circumstances' to be considered in the exercise of the interpretive process. Corbin, Contracts, sec. 551, 803. See Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), Cardozo, J." West Caldwell v. Caldwell, 26 N.J. 9, 22 (1958).
The contract and its supplement, and the provisions pertinent to this issue as noted above, include those provisions which would reasonably be the concern of municipal bodies, which are contracting parties. The annual charge per person occupying the premises, the annual minimum payment, the *97 provision for added payments when the population exceeds a fixed total are well defined terms. Considering the situation of the parties, the attendant circumstances, the objects they were striving to attain, and the existing statutes, in the interpretation of the contract, together with its terms, I reach the conclusion that the authorities legally served their several purposes to their mutual advantage and were guided by approved standards.
There is no evidence of a mutual mistake of fact. The fact there would be expenses of operation and replacement was apparent to both. The lack of knowledge as to the nature and amount of future expenditures at the making of the contract does not give grounds for the reformation of the contract for a mutual mistake. Similarly, the failure to recognize a relation between the cost of operation, amount of investment, and future expenditures by Beverly and the difference in charges which would result between users in Beverly and in Delanco is no reason to invalidate or alter the provisions of the contract.
The plaintiffs seek to invalidate the contract, and if they fail to do that, they ask the court to require an adjustment of the rates charged to Delanco users. The charge by the Beverly taxpayer, that the contract is illegal and the statute unconstitutional because it permits discrimination between Beverly and Delanco users, is untenable. He and the other citizens of Beverly are in one classification and they come within the definition of "person," N.J.S.A. 40:14A-3(4), and "such service charges may be charged to and collected from any person contracting" under the related provision, N.J.S.A. 40:14A-8(a). It should be noted that N.J.S.A. 40:14A-3(4) defines "person" as "other than a county or municipality of the state or a sewerage authority." The users in Delanco are in the same classification as to their own sewerage authority. As between authorities, the right to contract with the expectancy that each shall serve its own advantage is a power granted by the Legislature, not limited in time or terms and conditions.
*98 The plaintiffs submitted considerable proof to show that the main Beverly treatment plant, which serviced both authorities, was chargeable with a certain percentage of the Beverly total cost. Then they related by proof, which was far from convincing, but on the basis of the court's conclusion it is immaterial, the proportionate use by Beverly and Delanco in the amounts of sewage flow, resulting in their conclusion that if Beverly is paying a greater proportion of the costs of the main plant than Delanco, it is illegal and inequitable to cast the burden of the disproportionate cost on the Beverly users.
The disparity between the costs of the main plant operation between the Beverly users bearing the primary liability and the Delanco users paying under the contractual liability is not such as would warrant the court's consideration. All factors must be viewed including the ownership of the plant by Beverly, the advantages that come thereby for permanency of operation, the long-range security after increases of population, while balanced against that is the waiver by Delanco, when it contracted, of its ownership of a plant, with the present knowledge that the costs of construction now of a plant by Delanco would far exceed an earlier cost. These are among the underlying reasons for a contract.
In seeking a more equitable rate, Beverly does not offer nor is it able to restore Delanco to its original position. Beverly asks the court to rewrite the contract by modifying and increasing the amounts to be paid by Delanco. The terms of the original contract and its later amendment are explicit, and are those which would readily be expected to be included in such a contract between authorities. Unless today's view shows a contractual relationship between them which does violence to public policy, the parties must respect the contract.
Beverly has enjoyed the years of low rates by choice without facing the realities of future capital expenditures and the increase of rates now necessary is not such as would *99 warrant relief from the obligations of the contract by judicial intervention. The disadvantages which Beverly now finds may reasonably be offset by the many benefits it has received and will receive from the contract.
The cited statutes resolve the rights of the parties. An analysis of the existing contracts evidences a reasonable compliance. Their provisions as they affect both the Beverly and Delanco users are neither discriminatory nor illegally founded but are legally sound. There is no legal justification for lessening the term or modifying the amount chargeable to Delanco. The present status of the authorities as to each other is the normal result which would be expected considering the several factors operating between them.
Finding the contract valid, the plaintiff McCrudden's action is dismissed. There is no reason for the intervention of equity, and the action of the Beverly Authority is dismissed. No costs will be allowed.