BOARD OF FINANCE OF JERSEY CITY v. THE MAYOR AND ALDERMEN OF JERSEY CITY, THE UNITED GAS IMPROVEMENT COMPANY, THE JERSEY CITY GAS LIGHT COMPANY, THE CONSUMERS' GAS COMPANY, THE PEOPLE'S GAS LIGHT COMPANY ET AL.

1. The board of street and water commissioners of the city of Jersey City are required to advertise for proposals for contracts for street lighting, where the expenditure is to exceed $500, stating approximately, at least, the amount or extent of the lighting to be done under the contract contemplated.

2. The second section of the act of May 1st, 1894 (*Pamph. L., p.* 170), does not validate contracts made in disregard of the requirement of such advertisement.

On error to the Supreme Court.    For opinion of Supreme Court, see 26 *Vroom* 230.

For the board of finance of Jersey City, *Charles L. Corbin.*

For the gas light companies, *Flavel McGee.*

For the mayor and aldermen of Jersey City, *William D. Edwards.*

The opinion of the court was delivered by

THE CHANCELLOR. The writs of error bring up for review five judgments of the Supreme Court touching the legality of five separate contracts for street lighting in the city of Jersey City—one contract for electric lighting, another for lighting by oil, and the other three for lighting by gas. The first two named were sustained as valid by the Supreme Court, but the three gas lighting contracts were set aside because they extended for a longer period than five years, which was the maximum term limited by law for such a contract.

We concur in the conclusions of the Supreme Court upon which the three gas lighting contracts were set aside.

Although by its judgments that court expressly sustained the proceedings preliminary to the contracts, it did not discuss the question raised as to the regularity of the advertisements for proposals for the contracts.

By the one hundred and fifty-ninth section of the "Act to reorganize the local government of Jersey City," approved March 31st, 1871 (*Pamph. L., p.* 1160), it is provided that no contract for work or materials, requiring an expenditure of more than $500, shall be entered into by any board or department of the city government, except after due advertisement for six days at least in official newspapers. By the twenty-seventh section of a supplement to that act, approved March 24th, 1873 (*Pamph. L., p.* 407), it is provided that all advertisements for proposals for doing work or furnishing materials shall contain an approximate estimate of the amount of the various kinds of work or materials required. By the fourteenth section of the act approved March 28th, 1891 (*Pamph. L., p.* 249), which creates for cities of the first class boards of street and water commissioners and defines their powers and duties, the provisions of the charter of Jersey City, above referred to, became applicable to the board of street and water commissioners of Jersey City.

We think that, by force of this legislation, the board of street and water commissioners of Jersey City was required to advertise for proposals for contracts for the street lighting

in question, and approximately, at least, state the amount or extent of the lighting which each proposed contract would require. That board did advertise for proposals for lighting and did indicate the several sections of the city to be lighted by the several contracts, but failed to state approximately or otherwise either the number of lamps to be lighted or the length of time for which the proposed contracts were to continue. The advertisements referred to specifications on file in the office of the clerk of that board, but those specifications did not intimate how long the contracts were to run, nor, except in the case of the contract for lighting with oil, how many lamps were to be lighted. It is true that, by going through the districts indicated in the advertisements, it was possible for a bidder to estimate the number of lamps, but that it was not within the meaning of the law that such a deterrent task should be imposed, is conspicuous. The express requirement of the statute is that the estimate shall appear in the advertisement. But be this as it may, as the length of the term to be covered by the proposed contracts was not stated, the value of the contracts remained undisclosed and incapable of being ascertained. It is apparent that the tendency of the announcement of long contracts would have been to induce competition, because of the encouragement such contracts would offer capital to embark in the enterprise they would present. We think that the advertisements were not in compliance with the requirements of the statute, and that the defect in the proceedings in this respect is fatal to all the contracts.

The attention of the court has been directed to the act of the legislature, approved May 1st, 1894, entitled "An act relative to the lighting of streets, roads and public places in this state" (*Pamph. L., p.* 170), the second section of which provides that any contract theretofore entered into by any city for the lighting of public streets, roads or public places thereof, " for any period, not exceeding ten years, shall be as valid and effectual as if the same had been entered into and made pursuant to legislative authority for such term," and it

is insisted that thereby the contracts in question have been legalized.

But it is deemed that that act does not, by its terms, validate any of the contracts against the objection that the proposals for them were not advertised in accordance with the requirements of law. It is noted, in the language of the statute, that the only defect contemplated and waived is in the length of the term of the contract. The provision is, that where a contract has been entered into for less than ten years, it is to be as valid and effectual as if it had been entered into, pursuant to legislative authority, for its term.

As has been seen, the law authorized the contracts only after due advertisement for proposals for them, without which they were not entered into, pursuant to legislative authority, for any term. That fatal non-compliance with the law has not been waived.

Taking this view of the meaning of the act of 1894, it is not necessary to our conclusion to pass upon the insistment that the act is within the constitutional inhibition of a special law to regulate the internal affairs of a city, upon the ground that such contracts as those in question are of necessity replete with covenants and terms which are applicable only to the contracting parties, of whom a city is one, and, consequently, their establishment by retrospective enactment must result in a special regulation of internal affairs of that city. I am strongly inclined to the opinion that the proposition is entirely sound. It appears to me that to hold otherwise would open a way whereby the constitutional provision invoked might with ease be stripped of its salutary effect. Indeed, I fail now to perceive any process of reason by which a subsequent legislative waiver of a single fatal defect in such a contract can be regarded otherwise than as within the constitutional interdiction.

Our conclusion is that all the contracts are invalid and that the judgments which sustain two of them must be reversed, and, also, that the judgments which set aside the other three must be reversed, because they expressly sustain the proceed-

ings preliminary to the contracts, but that such reversal must be to the end that the preliminary proceedings, as well as the contracts, shall be set aside.

*For affirmance*—GARRISON.    1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, MAGIE, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SIMS.    8.