No. 31,593, No. 31,628

THE STATE OF KANSAS, ex rel. WARREN B. GRANT, County Attorney of Montgomery County, *Appellant,* v. CITY OF COFFEYVILLE et al., *Appellees.*

(28 P. 2d 1032.)

Opinion filed January 27, 1934.

*Warren B. Grant,* of Independence, *Richard L. Becker, Clement A. Reed* and *A. R. Lamb,* all of Coffeyville, for the appellant.

*A. A. Baker,* city attorney, *Dallas W. Knapp,* of Coffeyville, *Kirke C. Veeder,* of Independence, *John McCall, James A. Allen,* both of Chanute, and *Chas. D. Welch,* of Coffeyville, for the appellees.

The opinion of the court was delivered by

BURCH, J.: These appeals present a single question: May the mayor and commissioners of a city of the first class having commission form of government authorize by resolution a contract with a natural-gas company providing for purchase by the city of gas

for its own use, in its private, proprietary capacity, and granting the gas company privilege to use the streets and alleys to lay pipes to deliver the gas within the city?

The city owns an electric-light plant, and uses natural gas for fuel to operate the plant and to heat two city buildings, one of which houses the fire department. The city had a contract with the Independent Industrial Gas Company to supply gas. The contract expired. Being able to buy gas much cheaper of the Trinity Oil and Gas Company, the mayor and commissioners entered into a contract with the Trinity company to supply gas for all the city's requirements for five years. As a part of the contract the Trinity company was given privilege to lay pipes in the streets and alleys for the purpose of delivering the gas. This was done pursuant to resolution, the same as had been done with the Independent company. Power of the city to contract by resolution instead of by ordinance was then questioned, and the county attorney, using the name of the state, brought an action of quo warranto for the purpose of settling the question.

The proceedings resulting in these appeals, and proceeding before the public utilities commission resulting in a correct finding that the Trinity company is not a public utility, need not be recited. It may be observed, however, that after work of installing the pipes was virtually completed, this court obtained jurisdiction and stayed the work. The stay order was subsequently vacated, the connections with the city plant and buildings have been made, and the city has been taking gas from the Trinity company.

The contract with the Trinity company contained the following provision:

"The gas company is hereby granted the permission and a right of way to extend its gas main into the city to said light plant, the city hall, the old city hall and fire department, and the right to use such streets, alleys and public places as may be necessary or convenient to lay its pipe line for that purpose, and in consideration of such grant the gas company agrees to save the city harmless by reason of its operation in laying said pipe line, and agrees to restore the streets, alleys and public places so used in as good condition as they were before such use, and to save the city harmless from the presence or use of natural gas at any point up to the meter, provided that the meters are to be set outside the buildings."

R. S. 66-133 was pleaded by the state. That section of the statutes relates to contract of a city with a public utility or common carrier, and the Trinity company is neither. It is a producer of

natural gas having one customer only, the city of Coffeyville. It is not engaged in general commercial distribution of natural gas, and it does not have a pipe line long enough to bring it within the statutory definition of a public utility. (R. S. 66-104.)

The state pleaded R. S. 13-2801 relating to franchises. The section begins as follows:

"The board of commissioners of any city governed and controlled by the provisions of this act may permit any person, firm or corporation to manufacture, sell and furnish artificial or natural gas, light and heat, electric light, power or heat, or steam heat to the inhabitants, and to build street railways, to be operated over and along the streets and public grounds of such city, and may permit the construction and operation of telegraph and telephone lines, and the laying of pipes, conduits, cables, and all appliances necessary for the construction and operation of gas and electric-light and steam-heat plants and electric railways over and along the streets and alleys of such city, upon the express conditions hereinafter imposed, and not otherwise, in this act, to wit:

"*First.* All contracts granting or giving any such original franchise, right, or privilege, or extending or renewing or amending any existing grant, right, privilege, or franchise, shall be made by ordinance, and not otherwise."

Subdivision *second* of the section limits grants to not more than twenty years. Subdivision *third* prohibits exclusive grants. Subdivision *fourth* provides for fixing schedules of rates to be charged to the city and its inhabitants. Subdivision *fifth* provides for adequate compensation or consideration to be paid to the city for a franchise. Subdivision *sixth* provides that a franchise ordinance must be read in full at three regular meetings of the board of commissioners; must be published after final passage once a week for three weeks; and shall not take effect until sixty days after final passage. It then contains provisions for a referendum to determine whether the ordinance shall become effective. Subdivision *seventh* reads as follows:

"All contracts, grants, rights, privileges or franchises for the use of the streets and alleys of such city, not herein mentioned, shall be governed by all the provisions of this act, and all amendments, extensions or enlargements of any contract, right, privilege or franchise previously granted to any person, firm or corporation for the use of the streets and alleys of such city shall be subject to all the conditions herein provided for in this act for the making of original grants and franchises: *Provided, however,* That the provisions of this section shall not apply to the granting of side-track or switch privileges to railway companies for the purpose of reaching and affording railway connections and switch privileges to the owners or users of any industrial plants." (R. S. 13-2801.)

It is perfectly plain that the first part of this section relates to grants of privilege to use streets and alleys in connection with some service to the inhabitants of the city, as by furnishing them with artificial or natural gas, with electric current, with transportation facilities, and with facilities for communication. Privilege to serve the public is the subject of the grant, and use of streets and alleys for construction and maintenance of appliances necessary to furnish the service is merely an incident to that subject. In granting such privileges the city acts through its mayor and commissioners in its public, governmental capacity. In this instance the city acted through its mayor and commissioners in its private, corporate capacity to make contracts necessary to execution of its administrative powers. (R. S. 12-101.) What the city did was to buy gas, just as it might buy coal, and as an incident to delivery of the fuel it authorized the piping of the gas to the meters at the city light plant and city buildings. The distinction between exercise of public, governmental power, and private, administrative power, has been drawn so often it is not necessary to do so again.

Corporate action of a public, governmental character must be by ordinance. Ordinary administrative contracts may be authorized by resolution unless the legislature forbids. The requirement of an ordinance in the *first* subdivision of R. S. 13-2801 does not apply, and there is no prohibition against making a contract of the character under consideration by resolution.

The state urges that subdivision *seventh* closes the door against all grants of use of streets except by ordinance.

Subdivision *seventh* in effect declares that if the previous enumeration of grants for use of streets is not complete, other grants shall be subject to all the conditions attending grants for the enumerated purposes. That must necessarily mean if the conditions are appropriate. To be appropriate, the purpose must be of a public nature, and not administrative merely.

In this instance the city contracted to purchase gas for all its requirements for five years, for a stipulated price, delivery to be made within the city by pipe lines permitted to be laid in the streets and alleys. Applying subdivision *seventh*, a contract for an adequate fuel supply for five years is within the language but is not within the sense of subdivision *second*. The contract once made, the service is not exposed to competition. The price is not a rate open to regulation. A franchise charge would simply be added to

price in the formation of the contract. Purchase by the city of fuel for its own use does not affect the inhabitants in the way a franchise to furnish gas to the inhabitants affects them. Purchase of fuel is purely administrative business, use of the streets merely facilitated delivery, and. to avoid absurdity it is necessary to hold that subdivision *seventh* operates in the same field as the remainder of the section, the field of public, governmental activity.

The judgments of the district court are affirmed.

JOHNSTON, C. J., dissenting.

HUTCHISON, J., not sitting.