[No. 27583. Department Two. March 11, 1940.]

WASHINGTON FRUIT AND PRODUCE COMPANY *et al.,*
*Appellants,* v. THE CITY OF YAKIMA
*et al., Respondents.*[1]

[1]Reported in 100 P. (2d) 8; 103 P. (2d) 1106.

*Cheney & Hutcheson* and *Velikanje & Velikanje,* for appellants.

*Harry L. Olson,* for respondents City of Yakima *et al.*

*Laing & Gray* and *Rigg, Brown & Halverson,* for respondent Pacific Power & Light Company.

*John E. Blair, Clarence C. Dill,* and *E. Ben Johnson, amici curiae.*

STEINERT, J.—Plaintiffs instituted this action seeking to have a street lighting contract between the city of Yakima and Pacific Power & Light Company declared void and the performance thereof enjoined. Defendants' demurrers to the complaint were sustained,

and upon plaintiffs' refusal to plead further, the court entered judgment dismissing the action. Plaintiffs have appealed.

The allegations of the complaint are, in substance, as follows: Appellants compose a group of taxpayers and residents of Yakima and wage this action on behalf of themselves and all other taxpayers similarly situated. Respondent city of Yakima is a municipal corporation having a commission form of government, and operating under a charter adopted by its electorate. The individual respondents are the city's commissioners. Pacific Power & Light Company, hereinafter variously referred to as the Pacific Company or the power company, is a corporation engaged in the business of furnishing light in and to the city.

The Pacific Company formerly had a franchise from the city, but it had expired. A renewal thereof was presented to the voters of the municipality for their approval, but was defeated. Since that time, the power company has been operating in the city without a franchise.

On June 6, 1938, pursuant to a resolution adopted by the respondent commissioners, the Pacific Company and the city entered into the contract which is now under attack. By the terms of that agreement, the Pacific Company obligated itself to furnish, during a period of ten years, all electric overhead system street lighting service required by the city for lighting its streets, highways, and public places. The service was to include the continued operation and maintenance, and also the reconstruction, of the company's street arc and incandescent lamps then being used, and the extension and installation of additional overhead street lighting service from time to time as the city should request. The power company was to be compensated upon a stipulated flat rate, subject to any lawful orders

of the department of public service of the state, and also upon the condition that, if the power company furnished any other city with overhead street lighting service at lower rates, the city of Yakima would be entitled to the benefit of the lower schedule during the remainder of the term.

As alleged in the complaint, Art. XI of the city charter of Yakima provides that no franchise or right to occupy or use the streets shall be granted except by ordinance, and that such ordinance shall not become effective until it has been submitted to, and approved by, the majority of the voters at a general or special election (§ 2); that no franchise shall be granted unless it contains certain provisions relative to future acquisition of the utility by the city (§ 3); and that no franchise shall be granted without provision for proper compensation to the city (§ 6). .

No ordinance approving the contract was ever submitted to the voters, as provided by § 2, nor did the contract contain the provisions set forth in §§ 3 and 6 of Art. XI of the charter.

As further alleged in the complaint, the city charter also provides, in Art. VI, § 6, that in all cases of work to be done by contract, or of the purchase of property or material, when the cost thereof exceeds five hundred dollars, unless the city commission, by resolution, shall declare an emergency, the commission shall advertise for bids therefor in the official newspaper. In this instance, the city commission did not advertise for bids.

The complaint further contained allegations intimating fraud and conspiracy on the part of the respondents in entering into the contract. These, however, need not be detailed, since they do not appear to form the basis of any of the contentions made by appellants in their brief.

Finally, the complaint alleged that the United States government had constructed, and was constructing, huge electrical development projects on the Columbia river, at Bonneville and Coulee, and was planning other projects within the vicinity, all to the end of furnishing cheap electrical power to the city of Yakima, adjacent territory, and other communities in Washington; that power plants "will be available on or about January 1, 1939;" that a network of power transmission lines connecting the aforementioned electrical development projects in the state of Washington, and serving the county and city of Yakima directly, had been proposed and planned by the government, and that the construction thereof was already commenced and well under way; that the completion of such transmission lines was a matter of but a few months; that, as a result, a surplus of power at very low and economical rates would soon be fully available for the city and all taxpayers and inhabitants thereof, with a consequent tremendous saving of rates as compared to those provided in the contract; that the commissioners of Yakima county had made provision for submitting at the general election to be held on November 8, 1938, the question of the formation of a public utility district, and that the formation of such district would greatly reduce rates for electrical power in the city; that the city commissioners were well aware of these facts and conditions at the time they entered into the contract; and that theretofore the city had obtained from the Pacific Power & Light Company adequate and sufficient light without limitation upon the period, and without a promise of a contract or franchise.

Appellants assign three grounds upon which they seek to have the contract declared void and its performance enjoined: (1) That the contract actually grants a franchise to use the city's streets and there-

fore contravenes Art. XI, §§ 2, 3, and 6, of the city charter, in that it was not submitted to the voters for approval, did not contain certain provisions relative to future acquisition of the utility by the city, and did not provide for "proper compensation to the city;" (2) that the contract is violative of Art. VI, § 6, of the charter because there was no advertisement for bids; and (3) that the contract was for an unreasonable length of time under the existing conditions. We shall consider these contentions in the order just stated.

■ The first question before us is whether the contract in issue is actually a franchise. If it is not, then, of course, it is immaterial whether or not it was submitted to the voters for approval.

In support of their contention that the contract in question is a franchise, appellants cite numerous decisions which hold, in general, that a franchise is the right to use or occupy the streets for purposes other than those for which the streets are ordinarily used. That proposition, however, is not determinative of the problem with which we are here concerned. While it is unquestionably true that, by definition, a franchise is said to be the privilege of using the streets, it does not necessarily follow that the converse is true, and that *any* right or privilege to use public streets, regardless of the manner in which it arises or regardless of its purpose, is a franchise. The specific question before us now is whether or not the right in a public utility to use the streets of a municipality only in so far as is necessary in order to enable the utility to perform a valid contractual obligation to supply street lighting to the city, constitutes a franchise.

A franchise, in the sense in which we are now considering that term, connotes the right of a public utility to make use of the city streets for the purpose of carrying on the business in which it is generally

engaged, that is, of furnishing service to members of the public generally. When, however, a city undertakes, as in this instance, to supply a public need, and to that end purchases the necessary service from the utility, the city is to be regarded as merely authorizing the use of the streets as an incident to the delivery of service to itself, and not as granting a franchise to use the streets for general business purposes.

There is a practical unanimity in the cases upon the subject, to the effect that a contract made with a municipality for the sale and delivery to it of light or power is not a franchise, even though there is an implied grant of such use of the city's streets as may necessarily be involved in the performance of the contract.

In *Northern States Power Co. v. Granite Falls,* 186 Minn. 209, 242 N. W. 714, the facts and substance of the decision are set forth in the following quotation from the opinion:

"The contract required plaintiff to connect its lines, with the city's 'hydro plant . . . at some point to be designated,' where the current was to be delivered and metered. The city was obligated to 'grant by ordinance' authority to plaintiff to erect and maintain 'over such streets of the city . . . as may be necessary and suitable therefor' the transmission lines and other equipment necessary to enable plaintiff to connect with the city plant. The license given .was but incidental to the contract and necessary to enable plaintiff to perform its obligation.

"Franchises, in the sense now important, can come only from government; and in a transaction such as this 'a municipality does not exercise its legislative functions . . . but only its business or proprietary powers, to which the rules and principles of law applicable to contracts and transactions between individuals apply.' *Reed v. City of Anoka,* 85 Minn. 294, 298, 88 N. W. 981, 982. Plaintiff was not given the right, and does not otherwise possess it, to use streets

or alleys to furnish electric energy to inhabitants of the city or other customers outside it. The contract confers on plaintiff no right to deal with or serve the public. [Citing authorities.] There is present no element of franchise, which is 'a special privilege conferred by the government on' a grantee which does not belong to citizens 'generally by common right.' 4 McQuillin, Mun. Corp. (2 ed.) § 1739. No franchise being involved, the restrictions in defendant's charter upon its granting of franchises are irrelevant to the present inquiry."

In *State ex rel. Grant v. Coffeyville*, 138 Kan. 909, 28 P. (2d) 1032, the Kansas statute provided that all contracts, grants, rights, privileges, or franchises for the use of the streets and alleys of the city should be granted by ordinance. The city commissioners, by resolution instead of by ordinance, entered into a contract with a gas company to supply the city light plant and two public buildings with gas for a period of five years. The court, in holding the contract valid, said:

"It is perfectly plain that the first part of this section [the statute] relates to grants of privilege to use streets and alleys in connection with some service to the inhabitants of the city, as by furnishing them with artificial or natural gas, with electric current, with transportation facilities, and with facilities for communication. Privilege to serve the public is the subject of the grant, and use of streets and alleys for construction and maintenance of appliances necessary to furnish the service is merely an incident to that subject. In granting such privileges the city acts through its mayor and commissioners in its public, governmental capacity. In this instance the city acted through its mayor and commissioners in its private, corporate capacity to make contracts necessary to execution of its administrative powers. (R. S. 12-101.) What the city did was to buy gas, just as it might buy coal, and as an incident to delivery of the fuel it authorized the piping of the gas to the meters at the city light plant and city buildings."

See, also, *White v. Grand Rapids*, 260 Mich. 267, 244 N. W. 469; *Des Moines v. Welsbach Street Lighting Co.* (C. C. A., 8th), 188 Fed. 906; *Griffin v. Oklahoma Natural Gas Corp.* (C. C. A., 10th), 37 F. (2d) 545.

The cases cited by appellants upon the particular question are not in point. Most of them do no more than recite the general definition of a franchise, and the two cases which are at all similar in their facts are equally inapposite.

In *Vincennes v. Citizens' Gas Light Co.*, 132 Ind. 114, 31 N. E. 573, 16 L. R. A. 485, there was involved an ordinance which contained the *express grant* of a franchise. Section 3 of the ordinance, for instance, specifically referred to "supplying the public lamps and private consumers of said city." The question there was whether or not the ordinance also constituted a street lighting contract binding on the city. The issue here is different.

The other case, *Montana Water Co. v. Billings* (D. C. Mont.), 214 Fed. 121, was one in which the ordinance contained both a contract and the express grant of a franchise. The effect of a limited and implied right to use the streets as an incident to a contract for street lighting, as in the case at bar, was neither involved nor mentioned.

The contract here in question did not constitute a franchise and Art. XI of the Yakima city charter is therefore inapplicable.

It is argued, however, by appellants that, even though it be held that the rights here involved do not rise to the status of a franchise, Art. XI should nevertheless govern, since it reads:

"No franchise or *right to occupy or use the streets* . . . shall be granted . . . except by ordinance."

That argument, in our opinion, is answered by what has already been said. No "right to occupy or use the streets," was made the subject of a specific grant. Any such right, or license, was but an implied term necessary to the performance by the power company of its obligation to the city. The right, if it be called such, exists only as an incident to the contract for street lighting, and will cease to exist whenever the contract for any reason ceases to exist. *State ex rel. Grant v. Coffeyville*, 138 Kan. 909, 28 P. (2d) 1032.

The second ground upon which appellants seek to have the contract declared void, is that there was no advertisement for bids as required by Art. VI, § 6, of the city charter.

Although respondents contend to the contrary, we agree with appellants that a street lighting contract of the kind involved in this case, constitutes a "purchase of property or material" within the meaning of that article and section.

In *York v. Stone*, 178 Wash. 280, 34 P. (2d) 911, we said:

" 'Property' is a term of broad significance, embracing everything that has exchangeable value, and every interest or estate which the law regards of sufficient value for judicial recognition."

This court has held that electrical energy constitutes "supplies" within the meaning of Rem. Rev. Stat., § 9194 [P. C. § 855], which prohibits an officer of any town from being interested in any contract with the town for the furnishing of supplies. *Mumma v. Brewster*, 174 Wash. 112, 24 P. (2d) 438. Electrical energy has been held to be the subject of larceny. *People v. Menagas*, 367 Ill. 330, 11 N. E. (2d) 403, 113 A. L. R. 1276. Other cases which hold, or treat, electric current as property are the following: *Sixty-Seventh South*

*Munn, Inc. v. Board of Public Utility Com'rs,* 106 N. J. L. 45, 147 Atl. 735; *Hill v. Pacific Gas & Electric Co.,* 22 Cal. App. 788, 136 Pac. 492; *Terrace Water Co. v. San Antonio Light & Power Co.,* 1 Cal. App. 511, 82 Pac. 562.

However, the resolution adopted by the city commissioners recited that the Pacific Company had for many years been engaged in furnishing electric service within the city of Yakima and was the only person or corporation so engaged or in a position to furnish the city with street lighting service required by it. That recital of the resolution was not contradicted in the complaint.

The formality of calling for bids, under the circumstances, would have been a useless and futile thing, for there was no one else who could have submitted a bid at that time.

A statute requiring municipal contracts to be awarded on competitive bidding does not apply where the contract is for the supply of a public utility to be furnished by a person having a monopoly. *Hartford v. Hartford Electric Light Co.,* 65 Conn. 324, 32 Atl. 925; *Capdevielle v. New Orleans S. F. R. Co.,* 110 La. 904, 34 So. 868; *Atlantic Gas & Water Co. v. Atlantic City,* 73 N. J. L. 360, 63 Atl. 997; *Harlem Gaslight Co. v. Mayor, etc., of New York,* 33 N. Y. 309; *Mutual Electric Co. v. Pomeroy,* 99 Ohio St. 75, 124 N. E. 58; *State ex rel. Pamperin v. Oconto Electric Co.,* 165 Wis. 467, 161 N. W. 789; *Los Angeles Gas & Electric Corp. v. Los Angeles,* 188 Cal. 307, 205 Pac. 125; 3 McQuillin, Municipal Corporations (2d ed.), 866, § 1291.

Appellants cite *Board of Finance v. Jersey City,* 57 N. J. L. 452, 31 Atl. 625. In that case, four street lighting companies were parties to the action and the question with which we are here immediately concerned was not involved. Likewise, *Moran v. Thompson,* 20 Wash. 525, 56 Pac. 29, and *Reiter v. Chapman,* 177

Wash. 392, 31 P. (2d) 1005, 92 A. L. R. 828, both cited by appellants, are inapposite. The *Moran* case did not touch the particular question now under consideration, while in the *Reiter* case the court specifically found that "other persons were able to compete" and that "the matter was a proper subject for competitive offers."

For the reasons given, we conclude that no advertisement for bids was necessary.

■ Appellants finally contend that, under the special circumstances shown by the complaint, the contract was for an unreasonable length of time.

The mere fact that the contract extends beyond the term of office of the commissioners is not controlling, nor is it, of itself, material. *Tanner v. Auburn,* 37 Wash. 38, 79 Pac. 494.

In the absence of an express statutory or charter provision upon the subject, the question whether or not a contract of a city extending over a long period of time is reasonable, is ordinarily addressed to the sound judgment of the municipal authorities, and, in the absence of a showing of unreasonableness, such contract is *prima facie* valid. 3 McQuillin, Municipal Corporations (2d ed.), 947, § 1355 *et seq.* Upon this principle, contracts covering periods of ten, twenty, thirty, and even fifty, years have been sustained as valid. 44 C. J. 72, § 2127; *New Orleans Water Works Co. v. Rivers,* 115 U. S. 674, 29 L. Ed. 525, 6 S. Ct. 273.

However, the reasonableness of the period of time over which a contract is to extend may always be presented for decision, for municipal corporations cannot bind the municipality by a contract with a public utility for a longer time than is reasonable in view of the nature of the subject matter. *Barre v. Perry & Scribner,* 82 Vt. 301, 73 Atl. 574; 1 McQuillin, Municipal Corporations (2d ed.), 973, § 391.

The difficulty with the situation before us is that appellants have not been given an opportunity of showing by their evidence that the contract is, under the special circumstances alleged, unreasonable. The matter is before us, not upon the merits, but merely upon the complaint and demurrer.

It is alleged that the city had theretofore customarily obtained from the Pacific Company adequate and sufficient light, without limitation upon the period and without a promise of a contract; that government projects for the development and transmission of electrical energy were in the course of construction and nearing completion, and that means were assured of obtaining for the city unlimited lighting facilities at exceedingly lower rates than the Pacific Company offered; and that suddenly, and without justification, a contract was made with that company for a period of ten years, the effect of which would be to prevent the city from availing itself of the opportunities standing at its very doors. Whether such allegations could be substantiated by evidence, or whether the city commissioners had a valid and sufficient reason for entering into the contract despite such pending opportunities, we do not know and do not presume to determine. But we are clearly of the opinion that an issue of fact was properly and sufficiently tendered by the complaint, and that it called for an answer, either by way of general denial or some affirmative pleading, upon which a triable issue could rest. The issue to be determined by the court will be, not merely whether the city commissioners acted unwisely, or whether they could have made a better contract, but whether under all the facts and circumstances they abused the discretion that is vested in such legislative bodies. The demurrer, however, should have been overruled for the reasons assigned.

The judgment is reversed, with direction to the trial court to proceed in accordance with the views herein expressed.

BEALS and JEFFERS, JJ., concur.

GERAGHTY, J. (concurring specially)—While I concur in the conclusion reached in the majority opinion that the demurrer should have been overruled, I would go further.

In my opinion, the contract was void, since it was awarded without advertising for bids, as required by Art. VI, § 6, of the Yakima city charter. The majority opinion agrees with the appellants' contention that a street lighting contract of the kind involved in this case constitutes a "purchase of property or material" within the meaning of that charter provision. But it is concluded in the opinion that the Pacific Power and Light Company was the only company equipped to give the service, and reference is made to a resolution of the city commissioners reciting that the power company had been for many years engaged in furnishing electric service within the city of Yakima and was the only person or company so engaged or in a position to furnish the city with the street lighting service required by it.

The declaration of the city council is entitled to high respect, but, as a finding of fact, I think the recital in the resolution that the power company was the only corporation in a position to furnish the street lighting service required by the city, *for the ten-year period,* was negatived by the admitted facts.

The franchise of the power company had expired, and a proposal for its renewal had been submitted to the voters of the city for their approval, and rejected. The company was not, therefore, in a better position than any possible competitor to contract for the service for a ten-year period. The power company was occu-

pying the streets of the city at sufferance. It had no assurance, nor could the city commissioners conclusively assume, that it would be permitted to occupy the streets for any definite period in the future.

There was no dearth of electricity in the state of Washington nor in the Yakima valley, and there might well have been other private or public corporations ready to contract with the city for its street lighting. It would seem that there was no emergency requiring the execution of a long-time contract without advertising, because the power company was dependent, for a continuance of the right to do business, on the city's forbearance and could not refuse to supply the city with current service on reasonable terms. But if, for any reason, an emergency existed calling for entering into a contract without advertising, I think the spirit of the charter required that the contract, by its terms, should be terminable whenever the city should choose to terminate the company's right to occupy the streets. A contract so limited might be sustained within the rule deducible from the authorities cited in the majority opinion.

In discussing the public policy underlying statute and charter provisions requiring the advertising of calls for bids, this court, in *Reiter v. Chapman,* 177 Wash. 392, 31 P. (2d) 1005, 92 A. L. R. 828, said:

"The principle of giving notice of proposed public contracts is, broadly speaking, in the public interest, and when the legislative authority has indicated, as has that of this state, that it has adopted the general policy of requiring that notice be given of proposed public contracts, the courts will not, by strict construction, narrow the scope of a statute and limit its application in cases where such a construction is apparently against the legislative policy.

"Statutes controlling the making of contracts by the officers of municipal corporations are laws for the

protection of the public and those who support public agencies by the payment of taxes. Generally speaking, a sound public policy supports the proposition that a reasonable notice shall be given of the letting of public contracts, in order that, by competition in bidding, the public may receive the benefit of the greatest possible value for the least expenditure. *Grace v. Fobes,* 118 N. Y. Supp. 1062."

BLAKE, C. J. (concurring in the result)—While I agree that the demurrer should have been overruled, I cannot acquiesce in the reasons upon which that result is reached by the majority. Looking through the form to the substance of the contract, it appears to me to be a grant of a ten-year franchise to the power company. 26 C. J. 1012. As such, it is void, since it contravenes Art. XI of the city charter of Yakima which provides:

"No franchise or right to occupy or use the streets, highways, bridges, or public places of the city shall be granted, renewed or extended except by ordinance, *which ordinance shall be submitted to a vote of the electors of the city at a general or special election and shall not become operative unless approved by a majority of the electors voting upon said franchise; . . .*" (Italics mine.)

I concur in the result.

## ON REHEARING.

### [*En Banc.* June 8, 1940.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.