[No. 16738-7-II.    Division Two.    May 19, 1995.]

ROWAN NORTHWESTERN DECORATORS, INC., *Appellant*, v. WASHINGTON STATE CONVENTION & TRADE CENTER, ET AL., *Respondents*.

---

*Seth Morrison, Harlan Hatfield* and *Oles, Morrison & Rinker*, for appellant.

*Suzanne Shaw* and *John J. Ryan* of *Office of Attorney General*; *Dean Alan Messmer* and *Lasher Holzapfel Sperry & Ebberson*, for respondents.

BRIDGEWATER, J. — Rowan Northwestern Decorators, Inc. (Rowan) appeals the trial court's order on summary judgment dismissing Rowan's claim against the Washing-

ton State Convention & Trade Center (WSCTC) and Tradeshow Convention Services, Inc. (Tradeshow). Rowan sought to set aside an exclusive electrical services contract the WSCTC awarded to Tradeshow following a competitive bid process. We affirm.

In 1991, the WSCTC Board of Directors decided to contract with a private business to provide electrical utility services to convention center exhibitors. The WSCTC issued a request for proposal (RFP), that provided in relevant part:

### A. Background

WSCTC currently provides temporary electrical utility services to licensed clients using the Center's exhibit halls for trade show exhibitions. To date, this service has been provided in-house by WSCTC staff. WSCTC has determined the service can be provided more effectively by contracting out the service to a professional company with primary responsibility for this service.

### B. Scope of Work

The WSCTC wishes to contract with an experienced professional convention industry electrical utility contractor to manage all activities associated with the provision of electrical utility services at the WSCTC for the WSCTC clients.

The services required of the contractor will include the following:

(1) Provide all event electrical services, as described herein, at WSCTC for all the WSCTC clients, on an *exclusive* basis. . . .

(Italics ours.)

The WSCTC proposed a five-year contract. The private contractor was to pay a percentage fee to the WSCTC based on gross electrical billing, with a minimum annual payment of $50,000. The RFP stated that the WSCTC would award bonus points to state certified minority and women-owned business enterprises (MWBE) in the selection process.

Rowan and Tradeshow submitted proposals. A four-

member selection committee reviewed and rated the proposals. At the time of the initial rating, Tradeshow had an application for renewal of its MWBE status pending with the State. Three members of the selection committee awarded MWBE bonus points to Tradeshow on the assumption that Tradeshow's certification would be renewed. The selection committee recalculated the ratings when it discovered that the State had not renewed Tradeshow's MWBE certification. Even so, Tradeshow's proposal rated higher than Rowan's.

Shortly after the WSCTC awarded the contract to Tradeshow, Rowan filed an unsuccessful administrative appeal with WSCTC President John Christison pursuant to the RFP. WSCTC then entered into a five-year contract with Tradeshow.

The contract contained the following conflict of interest clause:

> The WSCTC may, by written notice to the Contractor terminate this contract if it is found after due notice and examination by the WSCTC that there is a violation of the Executive Conflict of Interest Act, Chapter 42.18 RCW, Code of Ethics for Public Officers and Employees, Chapter 42.22 RCW, or any similar statute involving the Contractor in the procurement of, or performance under, this contract.

Rowan filed suit in Thurston County against the WSCTC and Tradeshow seeking to set aside the contract. It sought declaratory and injunctive relief based on alleged: (1) lack of statutory authority to contract for electrical services; (2) violation of constitutional and statutory prohibitions on monopolies; (3) violation of the Executive Branch Conflict of Interest Act, RCW 42.18, and the Code of Ethics for Public Officers and Employees, RCW 42.22; (4) the WSCTC's arbitrary and capricious conduct in awarding the contract to Tradeshow; and, as to Tradeshow, (5) unfair business practices and tortious interference with business relationships.

The trial court granted summary judgment dismissing all of Rowan's claims, except those relating to Tradeshow.

Rowan voluntarily dismissed its tortious interference and unfair business practices claims against Tradeshow.

In reviewing an order on summary judgment, the appellate court engages in the same inquiry as the trial court. Summary judgment will be granted only if the record demonstrates that there is no genuine issue as to any material fact,[1] and the moving party is entitled to judgment as a matter of law.[2]

## I

Rowan argues that the WSCTC lacked statutory authority to contract with a private business to provide electrical services to convention center exhibitors on an exclusive basis because the provision of electrical services is a "separate business" not "necessarily" incident to the operation of a trade center. We disagree.

■ The parties agree that the WSCTC is a municipal corporation. When acting as a private business, that is, in a proprietary capacity, a municipal corporation "is implicitly authorized to make all contracts and to engage in any undertaking which is necessary to render the system efficient and beneficial to the public".[3]

The WSCTC enabling legislation provides that:

(1) The governor is authorized to form a public nonprofit corporation in the same manner as a private nonprofit corporation is formed under chapter 24.03 RCW. The public corporation shall be an instrumentality of the state and have all the powers and be subject to the same restrictions as are permitted or prescribed to private nonprofit corporations, but shall exercise those powers only for carrying out the purposes of this chapter and those purposes necessarily implied therefrom. . . .

---

[1]*Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 12, 721 P.2d 1 (1986).

[2]*Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[3]*Puget Sound Power & Light Co. v. Public Util. Dist. No. 1*, 17 Wn. App. 861, 864, 565 P.2d 1221 (1977); *see also Hite v. Public Util. Dist. No. 2*, 112 Wn.2d 456, 458-59, 772 P.2d 481 (1989).

(2) . . . The corporation shall maintain, operate, promote, and manage the state convention and trade center.

RCW 67.40.020.[4]

RCW 24.06.030 sets forth the general powers of private nonprofit corporations. It provides, in relevant part, that each corporation shall have the power:

(8) To make contracts . . . .

. . . .

(10) To conduct its affairs, carry on its operations, and have offices and exercise the powers granted by this chapter, . . . .

. . . .

(17) To have and exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is organized and not inconsistent with the articles of incorporation or the provisions of this chapter.[5]

Reading RCW 67.40.020 and RCW 24.06.030 together, the WSCTC has authority to make contracts necessary to maintain, operate, promote, and manage the state trade and convention center. The provision of electrical services to convention center exhibitors is necessary to maintain, operate, promote, and manage the state convention center and is specifically referenced in former RCW 67.40.020(4) (Laws of 1988, 1st Ex. Sess. ch. 1, § 1). As a result, the WSCTC had authority to contract with a private company for the provision of electrical services in the trade center.

---

[4]Prior to July 1, 1993, RCW 67.40.020 included the following:

(4) In order to allow the corporation to receive payment for goods and services consistent with the practice of the convention and trade show industry, the corporation may honor credit cards in payment for food and beverage purchases, rental of space or facilities, *electrical services*, equipment, and other goods or services offered by the corporation.

(Italics ours.) Former RCW 67.40.020 (Laws of 1988, 1st Ex. Sess. ch. 1, § 1). The Legislature repealed § 4 to promote more efficient cash management procedures. Laws of 1993, ch. 500, §§ 1, 9.

[5]RCW 24.06.030.

Rowan mistakenly relies on *Port of Seattle v. Washington Utils. & Transp. Comm'n.*[6] In *Port of Seattle*, the court considered whether the Port of Seattle had authority to provide airporter service to and from Sea-Tac Airport. In analogizing *Port of Seattle* to this case, Rowan overlooks the key fact that neither party in *Port of Seattle* disputed the Port's authority to contract by concession agreement for the use of airport facilities.[7] As in *Port of Seattle*, it can hardly be disputed that WSCTC has authority to contract for the use of its own facilities. The express terms of the WSCTC enabling legislation and RCW 24.06.030 grant the WSCTC the power to contract with private companies.

■ The next issue is whether the WSCTC has authority to provide electrical services in the convention center by means of an exclusive contract. The rule is that if a municipal corporation's

> actions come within the purpose and object of the enabling statute and no express limitations apply, this court leaves the choice of means used in operating the [corporation] to the discretion of municipal authorities. *We limit judicial review . . . to whether the particular contract or action was arbitrary or capricious, or unreasonable.*[8]

(Citations omitted; italics ours.)

■ ■ The Supreme Court explained the arbitrary and capricious standard in *Equitable Shipyards, Inc. v. State*:

> Arbitrary and capricious action has been consistently defined by this court as "willful and unreasoning action, without consideration and in disregard of facts or circumstances." The arbitrary or capricious standard has been applied to challenges to bidding procedures even though there is no statutory provision affording review.
>
> When applying the "arbitrary and capricious" standard of review, a reviewing court does not substitute its judgment for that of the agency. Where there is room for two opinions, ac-

---

[6]92 Wn.2d 789, 597 P.2d 383 (1979).

[7]*Port of Seattle*, at 793.

[8]*Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 695, 743 P.2d 793 (1987).

tion is not arbitrary or capricious if exercised honestly and upon due consideration even if the reviewing court believes an erroneous conclusion was reached.[9]

(Citations omitted.)

▮ In this case, the trial court did not err in finding that the WSCTC has authority to make an exclusive contract for the provision of electrical services because awarding an exclusive contract deemed to be necessary by the WSCTC is not an arbitrary and capricious action.[10]

## II

Rowan next argues that the award of the contract was unreasonable under the reasonableness standards of *Washington Fruit & Produce Co. v. City of Yakima*[11] and *Taxpayers*.[12] Rowan also argues that the award was arbitrary and capricious because Tradeshow misrepresented its MWBE status, which "obviously affected the evaluation of other categories" and because the contract created an unavoidable conflict of interest.

We set forth the appropriate standard of review for a public contract award—the arbitrary and capricious standard—in the previous section.

▮ Applying the arbitrary and capricious standard, the trial court did not err in finding that the award was not arbitrary and capricious because of the addition and then the subtraction of MBWE points. Rowan does not dispute the fact that Tradeshow rated higher than Rowan even after the deduction of MWBE points. It produced no evidence to support its other allegations. Absent specific facts which go beyond mere unsupported allegations, it was not error for the trial court to have granted Tradeshow's and

---

[9] 93 Wn.2d 465, 474-75, 611 P.2d 396 (1980).

[10] *See Taxpayers*, at 695.

[11] 3 Wn.2d 152, 100 P.2d 8, *adhered to*, 3 Wn.2d 167, 103 P.2d 1106 (1940).

[12] 108 Wn.2d at 679.

WSCTC's motion for summary judgment.[13] Further, Rowan's argument concerning conflict of interest is not well taken. The conflict of interest clause in the contract eliminates Rowan's concerns.

### III

Rowan argues that the WSCTC is subject to Const. art. XII, § 22 and the Consumer Protection Act (CPA), RCW 19.86, because the trade center enabling legislation provides that the WSCTC is "subject to the same restrictions as are permitted or prescribed to private non-profit corporations". It then argues that the contract violates article XII and the CPA because the WSCTC must approve changes in the rate charged by Tradeshow and because the contract is a significant restraint on competitive opportunities for other contractors.

Const. art. XII, § 22 provides:

> Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, . . . for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity.

The relevant section of the CPA provides:

> It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce.[14]

RCW 19.86.040.

---

[13]*See Brame v. St. Regis Paper Co.*, 97 Wn.2d 748, 752, 649 P.2d 836 (1982).

[14]The CPA prohibition on monopolies

is patterned after and contains nearly identical language to the federal Sherman Antitrust Act, 15 U.S.C. § 1. When the Legislature enacted the CPA, it anticipated our courts would be guided by the interpretation given by the federal courts to the corresponding federal statutes.

(Footnote omitted.) *Ballo v. James S. Black Co.*, 39 Wn. App. 21, 25-26, 692 P.2d 182 (1984). *See generally*, Julian C. Dewell and D. Wayne Gittinger, *The Washington Antitrust Laws*, 36 Wash. L. Rev. 239 (1961).

■ Municipal corporations and state agencies are not generally subject to Const. art. XII, § 22 and the CPA.[15] This well established rule resolves this issue because RCW 67.40.020 expressly provides that the WSCTC:

> [S]hall be an instrumentality of the state *and* have all the powers and be subject to the same restrictions as are permitted or prescribed to private nonprofit corporations. . . .

(Italics ours.)

In this case, when the Legislature expanded the powers of the WSCTC by the use of the conjunctive "and", it in no way removed the State's immunity from the antimonopoly provisions.

## IV

Finally, Rowan argues that the contract should be set aside because: (1) Tradeshow violated the conflict of interest clause of the final contract, or because (2) the conflict of interest clause manifests the parties' intent to treat Tradeshow as a state actor and, thus, precludes Tradeshow from obtaining any economic benefits from the performance of the contract.

■ It is unnecessary to reach the merits of Rowan's argument because Rowan lacks standing to raise an issue regarding the performance or enforcement of the contract. In *Layrite Concrete Prods., Inc. v. H. Halvorson, Inc.*,[16] the court stated the well established rule that

> [a] third party may enforce a contract to which he is not in privity only if it is made to appear that the contracting parties intended to "secure to him personally the benefits of the provisions of the contract."

(Citation omitted.)

---

[15]*See Washington State Sch. Directors Ass'n v. Department of Labor & Indus.*, 82 Wn.2d 367, 374, 510 P.2d 818 (1973); *Washington Natural Gas Co. v. Public Util. Dist. No. 1*, 77 Wn.2d 94, 98-99, 459 P.2d 633 (1969); *State ex rel. Northwestern Elec. Co. v. Superior Court*, 28 Wn.2d 476, 183 P.2d 802 (1947).

[16]68 Wn.2d 70, 72, 411 P.2d 405 (1966).

Rowan is not a party to the contract, and there is no evidence that Tradeshow and WSCTC intended to secure Rowan the benefits of the contract. Therefore, Rowan cannot enforce the contract and the trial court did not err.

We affirm.

HOUGHTON, A.C.J., and MORGAN, J., concur.